**In re B.C.**

**Appeal of W.M. (Two Cases).**

**In re W.C.**

**Nos. 89–970, 89–971.**

District of Columbia Court of Appeals.

Argued Oct. 23, 1990.

Decided Dec. 7, 1990.

Donald L. Dworsky, Washington, D.C., appointed by this court, for appellant.

Denise L. Wiktor, Washington, D.C., appointed by this court as attorney and guardian ad litem, for appellees B.C. and W.C.

Herbert O. Reid, Sr., Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, and Mary L. Wilson, Washington, D.C., Asst. Corp. Counsel, filed a memorandum in lieu of brief for appellee District of Columbia.

Before NEWMAN and TERRY, Associate Judges, and PRYOR, Senior Judge.

PER CURIAM:

This appeal arises from the trial court's conclusion that two children, W.C. and

B.C., were neglected by their father, W.M., as defined by D.C.Code § 16–2301(9)(B) (1989 Repl.).[1] In August 1987, the District of Columbia alleged that the two children were neglected by their parents and recommended that they be placed in the third party custody of their maternal great-aunt, P.L. After a hearing with the father present, the court concluded that the children were "neglected child[ren]" under § 16–2301(9)(B).[2] As a result, the court transferred legal custody of the children to the Department of Human Services and permitted the children to remain in the physical custody of their great-aunt. On appeal,[3] the father challenges the court's determination that his children were neglected by him as defined by § 16–2301(9)(B).

The physical custody of the children changed numerous times from late 1984 to the summer of 1987. During most of that time, from March 1985 through April 1987, their great-aunt, P.L., had physical custody of the children. During the time that P.L. had physical custody of the children, their father visited them only once and never contributed financially towards their care. For a few months, prior to March 1985 and again during part of 1987, the children were in the physical custody of their mother.[4] During those times, their father did not know where they lived, did not know in what condition they were, and did not contribute financially towards their care. On the two occasions that P.L. retrieved the children from their mother, once from an abandoned apartment and once from the street, the children were in a neglected condition. They were unfed and dirty, lacked general care, had no clothing, and needed medical attention. W.C. had a scar on her leg from where her mother had bitten her. Both children were fearful of their mother. Since July 1987, the children have remained with their great-aunt.

The trial court concluded that although the father could have provided at least a minimal level of parental care and control, he chose not to be involved in his children's care and not to contribute financially towards their care. The court also found that his failure to maintain an ongoing parental relationship with his children was not caused by a lack of financial means. Although employed, the father chose not to contribute financially to his children's care. He did contribute for a time, however, to the care of another woman and her children who were not his own. The court concluded that as a result of the absence of a parental relationship on his part, the children lacked parental care and control necessary for their physical, mental, and emotional health which made them "neglected child[ren]" under § 16–2301(9)(B).

▮ In his appeal, the father challenges the propriety of the court's conclusion. He bases his argument on statutory interpretation. First, the father argues that § 16–2301(9)(B) applies to custodial parents only, and therefore, as a noncustodial parent, he could not have neglected his children under § 16–2301(9)(B). Second, the father argues that the court imposed upon him a greater standard of care than the statute required. Third, the father argues that the required nexus between his actions and his children's neglect was absent.

1. Section 16–2301(9)(B) defines "neglected child" as a child "who is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his or her physical, mental, or emotional health, and the deprivation is not due to the lack of financial means of his or her parent, guardian, or other custodian."

2. A separate hearing was held regarding their mother, who was not present and whose whereabouts were unknown. The court concluded that the children were neglected by their mother under § 16–2301(9)(A), (B), and (C). The mother, who is abusive towards her children, is a homeless woman with drug and alcohol problems.

3. Although the District of Columbia filed a separate petition for each child, this court consolidated their cases for this appeal.

4. At one point in 1987, police were summoned to the Capital City Inn homeless shelter because the mother was reacting violently to PCP. This incident brought W.C. and B.C. to the attention of the Department of Human Services. The father was aware already that the mother had a drug and alcohol problem and that she was abusive towards the children.

However, the foundation underlying all of the father's arguments is that he did not have physical custody of his children.

■ The purpose of the child neglect statute is to promote the best interests of allegedly neglected children. Therefore, the primary concern of the court in this case must be the welfare of the neglected children. Under § 16–2301(9)(B), the court only needs to find that the children are *without* the statutory requirements. The court need not find that the father abused, abandoned or mistreated his children. See D.C.Code § 16–2301(9)(A), (F) (1989 Repl.). Once the court finds the statutory requirements to be absent, the only excuse that can preclude a conclusion that the children are "neglected child[ren]" is a lack of financial means. D.C.Code § 16–2301(9)(B) (1989 Repl.). The relevant focus for the court under § 16–2301(9)(B) is the children's condition, not the father's culpability.

The father, who concurs with the court's conclusion that custody of his children should be given to P.L., challenges the court's determination that his children are "neglected child[ren]." He asserts that, as a noncustodial parent, he did not neglect his children under § 16–2301(9)(B). In doing so, the father misconstrues the appropriate focus of the court's inquiry. He is not a defendant nor an accused. The father's aversion to the potential personal implication of the court's finding that his children are neglected children is not the relevant issue.[5] The relevant issue is the condition of the children, *i.e.*, whether the children are without the statutory requirements for whatever nonfinancial reason.

In his argument, the father clings to the words "other custodian" for the assertion that § 16–2301(9)(B) addresses only custodial parents, *i.e.*, parents who have physical custody of a child. Essentially, the father argues that only custodial parents' actions should be considered under § 16–2301(9)(B). He argues that the phrase "parents, guardians, or other custodians" refers to people who have physical custody of a child and therefore not to him. His semantic argument has no merit.

The father argues that "other custodians" means "parents, guardians, and *other such like* custodians" or those people with physical custody of a child. However, the statute defines "custodian" as "a person or agency, *other than* a parent or guardian, to whom the legal custody of a child has been granted by the order of the court or who is acting in loco parentis." D.C.Code § 16–2301(12) (1989 Repl.) (emphasis added). "Custodian" is not a factual description of the living arrangements between someone and a child. "Custodian" refers to the relationship, legal custody, created or imposed by the law. D.C.Code § 16–2301(21) (1989 Repl.). Furthermore, even the term "custody," by itself, refers to more than mere physical control. *In re L.E.J.*, 465 A.2d 374, 378 (D.C.1983). "Custody" encompasses the "entire bundle of parental rights and responsibilities." *Id.* The commonality in "parents, guardians, and other custodians" in § 16–2301(9)(B) is not mere physical custody of a child, but rather a legal duty with respect to a child.[6] Therefore, the proper inquiry remains whether the children are without the statutory requirements of § 16–2301(9)(B) because those who have the legal obligation to insure the children's welfare have not exercised that obligation for any nonfinancial reason.

The father's absence or lack of physical custody does not relieve him of the legal obligations owed to his children. The statute directs the court to find that the child is a "neglected child" unless the reason for

---

**5.** The trial court noted that the father was not a "defendant" despite the implication raised by the term "neglected child." Prior statutes had used the term "dependent child" rather than the term "neglected child." *In re N.M.S.*, 347 A.2d 924 (D.C.1975).

**6.** It is certainly possible for one to be a "custodian" of a child without having physical custody.

For example, a child welfare agency can have legal custody of a child while a foster parent has actual custody of the child. Accepting the father's interpretation would mean that once a foster parent has physical custody of a child, the child welfare agency would no longer be responsible under this subsection for the welfare of that child.

the child's neglected condition is a lack of financial means on the part of the parent.[7] The statute authorizes no other excuse. Whether or not a person charged with legal obligations for a child chooses to exercise those obligations is irrelevant to the legal status of that person vis-a-vis that child. The father's lack of physical custody, therefore, does not excuse him from consideration under § 16–2301(9)(B) nor relieve him of his parental responsibilities.

Parental responsibilities do not terminate absent the death of the parent or a court order. *See Martin v. Tate,* 492 A.2d 270, 273 (D.C.1985). Even a change in legal custody, something that encompasses the rights and responsibilities of physical custody, does not extinguish a parent's parental responsibilities. D.C.Code § 16–2301(21)–(22) (1989 Repl.). The failure of the father to exercise the duty imposed on him by the law does not relieve him of the obligations flowing from that duty. To conclude otherwise would render the legal duty meaningless.

Next, the father argues that § 16–2301(9)(B) imposes a lesser standard of care on a noncustodial parent. There is no statutory support for any distinction based upon physical custody. The absence of physical custody on the part of one parent is irrelevant, in this case, to the condition of a child. The only relevant standard applicable is whether a child is without the statutory requirements for any nonfinancial reason. Therefore, the father's argument has no merit.

Finally, the father argues that he did not cause his children to be "neglected child[ren]." The father asserts that there was no nexus between his actions and his children's neglected condition. Again, this is not a question of whether the father should be held culpable for the actions of another. The legal relationship is a nexus in and of itself. A child is still deprived whether an absent parent allows the child to be deprived or whether a custodial parent deprives the child. The only relevant consideration is the child's condition, not relative degrees of fault. Therefore, the father's third argument has no merit.

Accordingly, the judgment on appeal is

*Affirmed.*

***

7. In his appeal, the father does not challenge the trial court's finding that he was not without the financial means.