**In re C.V., R.H., Appellant.**

**In re C.V., B.V., Appellant.**

**In re M.V., B.V., Appellant.**

**In re T.V., B.V., Appellant.**

Nos. 96–FS–255 to 96–FS–258.

District of Columbia Court of Appeals.

Argued Oct. 15, 1998.

Decided Nov. 12, 1998.

Paul Edward Kay, Washington, DC, appointed by the court, for appellant B.V.

Robert E. Sylvester, Washington, DC, appointed by the court, for appellant R.H.

Judith Katz, as guardian ad litem, for C.V., M.V., and T.V.

Before WAGNER, Chief Judge, and STEADMAN and FARRELL, Associate Judges.

FARRELL, Associate Judge:

In these appeals, we review decisions of the trial court terminating the parental rights of the mother, B.V., with respect to three children, C.V., M.V., and T.V., and of the putative father, R.H., with respect to one child, C.V.

The legal touchstone in any proceeding to terminate parental rights is the best interest of the child, and that interest is controlling. This court may reverse a trial court's determination of where the best interests of the child lie only when the judge has abused his discretion.

*In re T.W.*, 623 A.2d 116 (D.C.1993) (citations and internal quotation marks omitted). With respect to the mother, B.V., essentially for the reasons stated by the trial judge, we sustain the judge's decision that termination was in the best interests of the three children.[1] At the same time, we reverse the termination of the parental rights of the putative father, R.H. As to him, the evidence adduced at the termination hearing is insufficient to support "a determination based upon clear and convincing evidence that termination of the parent and child relationship is in the best interest of the child." D.C.Code § 16–2359(f).

## I.

■ The termination hearing was held in December 1995. Neither the mother nor the putative father was present, although both were represented by appointed counsel. The evidence adduced at the hearing consisted of testimony and neglect stipulations entered into in March 1993 as to each child in question. The evidence showed that, upon the birth of the child C.V. in November 1992, the mother (B.V.) did not take custody of the child, who therefore was placed in shelter care at a boarder baby facility. In March 1993, C.V. was adjudicated neglected in that the mother was in a drug treatment program and unable to provide care and shelter for her. In June 1993, the child was placed in the care of a foster mother, with whom she remained at the time of the termination hearing and who had expressed an interest in adopting her. B.V. had never asked for visits with the child and had had no personal contact with her since June 1993. Moreover, the child's medical and emotional needs were

being met by the foster mother. As the trial judge found, she was "thriving" in the foster home and had become "well integrated into [it]." By contrast, the mother's involvement with drugs "compromised her ability to parent" C.V. as well as the other children, M.V. and T.V.[2]

## II.

Under the grounds enumerated in D.C.Code § 16–2353, the record provides substantial support for the decision to terminate the mother's parental rights. *See* D.C.Code § 17–305(a) (1997). However, the same cannot be said with respect to the putative father.[3] The testimony at the hearing contains the following single reference to R.H. and nothing more:

Q. [to the Board of Child Care social worker:] Okay. Do you have any information on C's [C.V.'s] father?

A. The only information that I have . . . was a putative name, which was in the file.

Q. And do you recall who was alleged to be the father?

A. As I recall, it was Ronald [H.].

Q. Could it have been Russell [H.]?

A. Russell [H.]. . . .

Q. Did you ever receive any more information about Mr. [H.] as to whether or not he was the father?

A. No, I did not.

Although the judge in her findings cited the 1993 neglect stipulation for the fact that "the father was not available to provide care and shelter for this child," in fact neither the

1. Counsel for B.V. contests, on hearsay grounds, the trial court's reliance on a statement by the child T.V. to her foster parent and caregiver that she wanted to be adopted by the foster parent. As the record reveals no objection to this statement, we need not consider whether it fell afoul of the hearsay rule rather than, for example, being admissible to show the child's state of mind. On this record we also reject the argument that the trial judge abused her discretion in failing to interview the children before determining their individual opinions as to their best interest in the matter. *See* D.C.Code § 16–2353(b)(4) (1997); *In re T.W.*, 623 A.2d at 117.

2. With regard to the children M.V. and T.V., evidence in the record supports the trial judge's finding that both had become fully integrated into their current foster homes; that both were being emotionally and physically cared for and having all their medical needs met by the foster parents; and that the mother B.V., besides absenting herself from the termination hearing, had been absent from the children's lives at least *since her last visitation with T.V. in 1994.*

3. It is settled that the rights of a putative parent are among those covered by the TPR statute. *In re T.M.*, 665 A.2d 207, 210 (D.C.1995).

father nor his attorney [4] had been a party to the stipulation, nor did the stipulation mention him. And, although C.V.'s guardian *ad litem* stated at the hearing that R.H. had made only "one or two" appearances at review hearings, neither acknowledging paternity there nor appearing for court-ordered paternity testing, the trial judge heard no testimony confirming these assertions and was not asked to take judicial notice of any court documents supporting them.[5]

As pointed out above, termination must be supported by clear and convincing evidence that it is in the child's best interest. § 16–2359(f). Moreover, only "evidence which is relevant, material, and competent to the issues" may be admitted at the hearing and underlie the termination decision. § 16–2359(d). To be sure, some evidence at the hearing supported the termination of R.H.'s parental rights. The evidence of the child C.V.'s "need for continuity of care and caretakers and for timely integration"—as well as actual integration—"into a stable and permanent home," § 16–2353(b)(1), counted against both the mother and the putative father; as did the evidence of "the quality of the interaction and interrelationship of the child with ... her ... siblings ... [and] foster parent." [6] § 16–2353(b)(3). On the other hand, proof of R.H.'s own interaction and interrelationship with the child, or lack thereof, or even of his actual paternity, was simply absent from the testimony and documentary evidence presented. Indeed, the trial judge initially reflected uncertainty as to whether R.H.'s rights were being adjudicated at the hearing, apparently because the guardian *ad litem*'s motion and amended motion to terminate referred only to the rights of the mother, B.V. All told, the proof offered as to R.H. was not clear and convincing evidence sufficient to support the termination of his parental rights.

The order affirming the termination of the parental rights of B.V. is, therefore, affirmed. The order terminating the parental rights of R.H. is reversed and the case remanded for further proceedings consistent with this opinion.[7]

*So ordered.*

---

4. An attorney had entered his appearance for R.H. on February 18, 1993.

5. In her termination order the judge made no reference to the paternity issue, other than to refer to R.H. once as the "putative father."

6. The judge found that C.V. visited routinely with her siblings and that that relationship would be maintained after the termination and possible adoption.

7. Assuming that termination of R.H.'s parental rights continues to be sought, it is only logical that "before anything else takes place" his paternity or lack of it is established as to C.V. *In re M.N.M.*, 605 A.2d 921, 930 (D.C.1992); *see also In re T.M.*, 665 A.2d at 211. Should he not cooperate in that process, as is said to have occurred before, that fact may carry decisive weight in further termination proceedings.