722 A.2d 343 (1998)
In re Dom.L.S., D.S., Appellant.
In re Don.L.S., D.S., Appellant.
Nos. 94-FS-258, 94-FS-326, 95-FS-514, 95-FS-515.
District of Columbia Court of Appeals.
Argued June 25, 1998.
Decided December 31, 1998.
*344 Stephen L. Watsky, Washington, DC, for appellant.
Beverly G. Stone, Greenbelt, MD, for appellees.
Charles F.C. Ruff, Corporation Counsel at the time the briefs were filed, and Charles L. Reischel, Deputy Corporation Counsel, entered appearances for appellee District of Columbia.
Before WAGNER, Chief Judge, and MACK and KING,[*] Senior Judges.
WAGNER, Chief Judge:
In these consolidated cases, D.S. (Ms. S.) appeals from orders of the trial court (1) denying her motion to dismiss a motion to terminate her parental rights of the minor children, Dom.L.S. and Don.L.S., and (2) denying her visitation with the children following an adjudication of neglect until a permanency plan was formulated. Ms. S. argues that the motion to terminate parental rights was filed prematurely under D.C.Code § 16-2354(b) (1997 Repl.) because it was filed less than six months after the disposition hearing, although more than six months after the adjudication of neglect. We hold that the time requirement for the filing of a motion to terminate parental rights under D.C.Code § 16-2354(b) is calculated from the date of adjudication of neglect. Therefore, the motion was timely filed in this case, the statutory criteria having been met otherwise. Since Ms. S.'s parental rights have been terminated pursuant to that motion, her remaining challenge to the denial of visitation is dismissed as moot.[1]

I.
Dom.L.S. and Don.L.S. were born to D.S. on April 5, 1991 and May 10, 1993 respectively. On April 23, 1993, Ms. S. entered a plea of guilty to second degree murder of her three month old child, V.S., and she was sentenced to a term of incarceration of eight to twenty-four years, which she was serving at the time relevant hereto. On December 9, 1993, Ms. S. entered a stipulation admitting to neglect of her children, Dom.L.S. and Don.L.S., within the meaning of D.C.Code § 16-2301(9)(E).[2] A disposition hearing was scheduled for February 7, 1994. At the hearing, the government submitted a disposition report recommending that there be no visitation between Dom.L.S. and Ms. S. and that any visitation with Don.L.S. be under strict supervision. The trial court (Chief Judge Hamilton) denied visitation at that time because it had not been shown sufficiently that the visits would not be injurious to the welfare and well-being of the children. For that reason, the court denied visitation pending the formulation of a permanency plan which addressed Ms. S.'s role with the children.
On June 29, 1994, the guardian ad litem for the children filed a motion to terminate Ms. S.'s parental rights pursuant to D.C.Code § 16-2354. Ms. S. filed a motion to dismiss the motion on the ground that it had been filed less than six months from the date of the disposition hearing and was therefore premature. The trial court (Judge Brook Hedge) denied the motion to dismiss, and Ms. S. appealed (App. Nos. 95-FS-514 & 95-FS-515). In separate appeals, Ms. S. challenged the trial court's order denying her visitation with the children pending development of a permanency plan (App. Nos. 94-FS-258 & 94-FS-326).

II.
Ms. S. argues that the trial court erred in denying her motion to dismiss the motion to *345 terminate her parental rights because it was filed prematurely, and therefore, the court lacked jurisdiction to consider it. D.C.Code § 16-2354(b) provides in pertinent part:
[a] motion for the termination of the parent and child relationship may be filed only when the child who is the subject of the motion has been adjudicated neglected at least six (6) months prior to the filing of the motion and the child is in the court-ordered custody of a department, agency, institution or person other than the parent;. . . .
Ms. S. contends that the six month time period provided for in § 16-2354(b) is calculated from the date of the disposition hearing rather than from the date of a stipulation or finding of neglect. The guardian ad litem for the children argues, consistent with the trial court's ruling, that the time for filing the motion under § 16-2354(b) is calculated from the date of the stipulation or trial finding of neglect.
In interpreting any statute, we start first with its plain meaning. J. Parreco & Son v. Rental Hous. Comm'n, 567 A.2d 43, 45 (D.C.1989). "If the words are clear and unambiguous, we must give effect to [their] plain meaning." Id. The plain language of the statute supports the meaning accorded it by the trial court in this case. The statute expressly uses the date of adjudication of neglect to commence the six month period after which a motion to terminate parental rights may be filed. D.C.Code § 16-2354(b). The ordinary meaning of adjudication is clear. Adjudication is defined as "the determination of a controversy and a pronouncement of a judgment based on evidence presented, implies final judgment of the court or other body deciding the matter, as opposed to a proceeding in which the merits of the cause of action were not reached." BARRON'S LAW DICTIONARY 11 (4th ed.1996). In BLACK'S LAW DICTIONARY, adjudication is defined as "[t]he legal process of resolving a dispute[;][t]he formal giving or pronouncing of a judgment or decree in a court proceeding; also the judgment or decision given." BLACK'S LAW DICTIONARY 42 (6th ed.1990). However, an adjudication can be made without resolving all issues in the case; it may involve an interlocutory decision or final resolution of a particular issue. See WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1971).
Here, the statute, by its terms, makes the "adjudication of neglect" a condition precedent to the filing of a motion to terminate parental rights. The statute and applicable court rules differentiate between the factfinding proceeding in which an adjudication of neglect can be made and a dispositional hearing. An adjudication of neglect involves a determination that the parents have engaged in certain specified conduct contrary to the best interest of the child as defined in D.C.Code § 16-2301(9)(A)-(F).[3]See In re J.J.Z., 630 A.2d 186, 192 (D.C.1993). After a factfinding hearing, the trial court determines whether the allegations of neglect have been established. D.C.Code § 16-2317(c)(2); Super. Ct. Neg. R. 4 (governing factfinding hearing). The rules for adjudicating a child neglected include a provision for the parents to stipulate to a finding of neglect, as Ms. S. did in this case. See Super. Ct. Neg. R. 17. In such cases, the parent can stipulate to specific facts which support a finding of neglect. *346 Id. If satisfied that the stipulation was entered into voluntarily and knowingly and that it is sufficient to support a neglect finding, the trial court enters an order to that effect. Id.
The disposition hearing, which Ms. S. contends is the date from which the time for filing a motion to terminate parental rights must be measured, involves a separate hearing with a different focus. The disposition hearing generally follows an adjudication that the child has been neglected and focuses upon plans affecting the child's future care and custody. In re X.B., 637 A.2d 1144, 1147 (D.C.1994); see also Super. Ct. Neg. R. 21.[4] Various sections of the statute make clear that an adjudication of neglect precedes, and is distinct from the disposition proceeding. See, e.g., D.C.Code §§ 16-2317(c)(2), -2320(a), (f). The statute provides that if the allegations of neglect have been established by a preponderance of the evidence, after giving notice, the court shall hold a dispositional hearing. D.C.Code § 16-2317(c)(2). Similarly, the statute addresses disposition for a child after a finding that the child is neglected. See D.C.Code § 16-2320(a), (f). Given the clear statutory distinction between the adjudication of neglect and the disposition hearing, which follows, Ms. S.'s contention that "adjudication" is synonymous with "disposition" is unpersuasive. Moreover, if the legislature had intended to use the date of disposition as the operative date for determining when a motion for termination of parental rights could be filed, it would have said so, no doubt, given the elaborate delineation of the two events.
Ms. S. argues that the legislative intent shows that the purpose of the six month period was to ensure that the family would be able to "ameliorate the conditions of the neglect," and the interpretation she advances provides for a longer period to fulfill that purpose. Specifically, the report of the Judiciary Committee to the District of Columbia Council with respect to D.C.Code § 16-2354 states:
Subsection (b) limits the filing of a motion under this subchapter to cases where the child has been adjudicated neglected and is in the court-appointed custody of a department, agency or institution, or person other than the parent. It also requires that at least six months have elapsed between the neglect adjudication and the filing of the motion . . . . The rationale behind the subsection is that fairness to the parent(s) and child require limiting consideration of termination to cases where there has been an adjudication that the child is neglected and there has been time for the parents to ameliorate the conditions of neglect.
Committee on the Judiciary, The Prevention of Child Abuse and Neglect Act of 1977, Title IV of Bill No. 2-48, p. 25 (March 29, 1977) (emphasis added).
Even if additional time for the parents to address the conditions which resulted in the neglect finding might have served better the last mentioned legislative goal, that purpose is not necessarily frustrated by calculating the six months from the date of adjudication of neglect. Some services are available pending the disposition hearing in neglect proceedings. See, e.g., D.C.Code § 23-2310(b), (d) (provision for shelter care pending factfinding and dispositional hearing and visitation with parents); D.C.Code § 16-2315(a) (allowing physical or mental examination of child after filing of the petition); D.C.Code § 16-2315(e)(2) (providing for mental or physical examination of parent, guardian or custodian whose ability to care for the child is at issue, after adjudication of neglect). Thus, pending the hearing, the court can proceed with plans for the provision of social, medical and other services directed toward alleviating the conditions which resulted in the parent's neglect of the child. See X.B., supra, 637 A.2d at 1147; D.C.Code § 16-2319(c) (providing for dispositional study). In approving the parties' stipulation in this case, the court approved a plan for addressing some of the conditions *347 which resulted in the neglect. The stipulation provided that the Court Social Services Division continue efforts to place the children with a suitable family member and for Department of Human Services (DHS) to cooperate with any court ordered visitation.
Ms. S. argues that the court should apply the rule applicable to juvenile delinquency proceedings to a neglect proceeding in determining when a neglect adjudication occurs. A juvenile adjudication consists of a two-step process: (1) a factfinding hearing to determine whether the allegations of the petition are true, and (2) a dispositional hearing to determine whether the child is in need of care and supervision. In re M.C.F., 293 A.2d 874, 877 (D.C.1972). Ms. S. contends that M.C.F. stands for the proposition that adjudication in delinquency proceedings occurs only at the conclusion of the second step and that the same rationale supports a determination that adjudication occurs for purposes of neglect only after the disposition hearing. This argument is unpersuasive because of significant differences in the statutory frameworks for the two types of proceedings. The statute governing juvenile delinquency proceedings requires that the petition state the specific statute or ordinance which the child has violated and that the child "appears to be in need of care or rehabilitation." D.C.Code § 16-2305(d). Thus, "there are two essential elements in a finding of delinquency." M.C.F., 293 A.2d at 877. If it is shown that the child is not in need of rehabilitation, the juvenile must be discharged. Id. On the other hand, there are not two essential elements to an adjudication of neglect. An adjudication of neglect focuses on the misconduct of the parent in relationship to the child's welfare. See J.J.Z., supra, 630 A.2d at 192; D.C.Code § 16-2301(9)(A)-(F). Once an adjudication of neglect is made, the subsequent action of the court at the disposition hearing will not eliminate that adjudication. Under our neglect statute, this adjudication precedes the subsequent disposition hearing which provides for the future care and custody of the child. X.B., supra, 637 A.2d at 1147. The differences in the statutory schemes for juvenile delinquency determinations and neglect adjudications dictate a different treatment for determining when adjudication occurs.
Ms. S. also argues that even if the adjudication of neglect occurs when the court accepts the stipulation of neglect, as the trial court did here, the second requirement for the filing of the motion to terminate parental rights had not been met at the time that the motion was filed. Specifically, she contends that the children were not in court-ordered custody of a department, agency, institution or person other than the parent for a period of six months prior to the filing of the motion. The statute specifies no time period that the child must be in custody of someone other than the parent as a precondition for filing the motion. It states only that "the child [be] in the court-ordered custody of a department, agency . . . other than the parent. . . ." D.C.Code § 16-2354(b). Unquestionably, the children were not in the care of their parents, and they had not been since September 29, 1992. By the terms of the order for shelter care entered that date, the court placed the children "in the custody of the Department of Human Services" with the condition that the children "not be released from the agency's custody until further order" of the court.
Ms. S. argues nevertheless that shelter care is not court-ordered custody as the statute requires. "The term `shelter care' means the temporary care of a child in physically unrestricting facilities, designated by the [Superior Court], pending a final disposition of a petition." D.C.Code § 16-2301(14). Ms. S. reads the statute too narrowly and without regard to other provisions of the statute which govern and explicate shelter care. The statute contemplates that the designated agency, here DHS, will determine with whom the minor child will live and provide for and attend to the child's shelter, as well as other needs. See D.C.Code § 16-2313(a), (f). Section 16-2313(f) makes express reference to an agency or department having custody of the child pursuant to a shelter care order. Thus, not only does the statute recognize that custody may be placed in an agency pursuant to an order for shelter care, but the terms of the court's orders in these cases specifically so provided. In any event, that *348 custody was lodged with some person or entity other than the parent pursuant to court order is what D.C.Code § 16-2354 provides as a precondition to the filing of a motion to terminate parental rights. That precondition was met here. For the foregoing reasons, the trial court had jurisdiction to consider the motion for termination of parental rights, and therefore, did not err in denying Ms. S.'s motion to dismiss the motion.

III.
Finally, Ms. S. argues that the trial court erred in denying her visitation rights with her children pending formulation of a permanency plan. Ms. S.'s parental rights were terminated by the court. Beyond the jurisdictional challenge to consideration of the motion to terminate parental rights, Ms. S. has not appealed from the order terminating parental rights.[5] Generally, a case is moot "when the issues presented are no longer `live' or the parties lack a legally cognizable interest in the outcome." McClain v. United States, 601 A.2d 80, 81 (D.C.1992)(citing Murphy v. Hunt, 455 U.S. 478, 481, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982)). Under that standard, Ms. S.'s appeals in which she raises the issue of denial of visitation (nos. 94-FS-258 and 94-FS-326), are moot. Since the parent and child relationship has been permanently terminated, Ms. S. has no right of visitation. Nor are we persuaded that this case falls within any exception to the mootness doctrine.
For the foregoing reasons, the orders appealed from in case nos. 94-FS-514 and 95-FS-515 are affirmed, and the orders appealed from in case nos. 94-FS-258 and 94-FS-326 are dismissed as moot.
So ordered.
NOTES
[*] Judge King was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on November 23, 1998.
[1] Except for the jurisdictional challenge to the trial court's consideration of the motion to terminate parental rights, Ms. S. did not otherwise appeal from the order terminating parental rights.
[2] D.C.Code § 16-2301(9)(E) states that a child is neglected "who is in imminent danger of being abused and whose sibling has been abused."
[3] The term "neglected child" is defined as one:

(A) who has been abandoned or abused by his or her parent, guardian, or other custodian; or
(B) who is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his or her physical, mental, or emotional health, and the deprivation is not due to the lack of financial means of his or her parent, guardian, or other custodian; or
(C) whose parent, guardian, or other custodian is unable to discharge his or her responsibilities to and for the child because of incarceration, hospitalization, or other physical or mental incapacity; or
(D) whose parent, guardian, or custodian refuses or is unable to assume the responsibility for the child's care, control or subsistence and the person or institution which is providing for the child states an intention to discontinue such care; or
(E) who is in imminent danger of being abused and whose sibling has been abused; or
(F) who has received negligent treatment or maltreatment from his or her parent, guardian, or other custodian.
D.C.Code § 16-2301(9)(A)-(F).
[4] Significantly, the rules of the Superior Court set forth the rules for the hearing on the neglect petition and the disposition hearing in separate sections. Part IV of the rules, which includes rule 16 (factfinding hearing) and rule 17 (stipulation of neglect), is captioned "Adjudication," and Part V, which includes rule 21 (disposition), is designated "Disposition and Review Proceedings."
[5] In her opposition to the motion to dismiss the appeal in this court, Ms. S. argued only that if she prevailed on the jurisdictional challenge to the trial court's consideration of the motion to dismiss, the visitation issue would not be moot.