In re V.K., M.K., Appellant.

In re S.K., M.K., Appellant.

In re C.K., M.K., Appellant.

In re Eu.K., M.K., Appellant.

In Re Mi.K., M.K., Appellant.

In re Co.K., M.K., Appellant.

Nos. 96–FS–1354, 96–FS–1355, 96–FS–1362, 96–FS–1363, 96–FS–1377 and 96–FS–1378.

District of Columbia Court of Appeals.

Argued June 17, 1999.
Decided Nov. 2, 2000.

Jon S. Pascale, appointed by the court, for appellant M.K.

Florence L. Smith, Bethesda, MD, appointed by the court, for appellee E.K.

Jill Singer, as guardian ad litem, filed a statement in lieu of brief for V.K., S.K., C.K., Eu.K., Mi.K. and Co.K.

Sheila Kaplan, Assistant Corporation Counsel, Jo Anne Robinson, Principal Deputy Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, filed a statement in lieu of brief for V.K., S.K., C.K., Eu.K., Mi.K. and Co.K.

Before RUIZ and REID, Associate Judges, and MACK, Senior Judge.

RUIZ, Associate Judge:

This case arises from the trial court's denial of appellant M.K.'s motion to reconsider a stipulation that her grandchildren were neglected because their mother had died. On appeal, M.K. argues that the stipulation was legally defective because it alleged neglect solely due to the death of the mother, and because it was not signed by her, the only party named in the original neglect petition. Therefore, she asserts, the trial court erred in allowing the stipulation to stand because it prevented her from contesting the neglect allegations in the original neglect petition and regaining custody of her grandchildren. We conclude that the stipulation was not legally defective and did not prejudice appellant. We, therefore, affirm the trial court's denial of M.K.'s motion to reconsider the stipulation.

## I.

After a July 27, 1995 probable cause hearing on the District's neglect petition, M.K.'s grandchildren were removed from her care and placed with E.K., the grandfather.[1] On March 4, 1996, the scheduled fact-finding hearing date,[2] the government offered a stipulation,[3] signed by E.K., his counsel, the guardian *ad litem,* a social worker and the government, which stated that V.K.'s children were neglected within the meaning of D.C.Code § 16–2301(9)(C) (1997)[4] because V.K. had died and was unable to care for them. M.K. did not object to this stipulation and it was accepted by the trial court, which then set a

---

1. According to the record, M.K. moved into her daughter V.K.'s home shortly before her daughter's death because V.K. was terminally ill and needed help caring for her seven children. After V.K. died on June 18, 1995, M.K. continued to care for her grandchildren until they were removed from the home after the July 27, 1995 probable cause hearing.

2. *See* Super. Ct. Neg. R. 16(b) (providing that finding of neglect must be supported by a preponderance of the evidence).

3. *See* Super. Ct. Neg. R. 17(a) (providing that stipulation "may be used in lieu of a fact finding hearing where the parties agree upon a set of facts which are sufficient to support a finding of neglect").

4. D.C.Code § 16–2301(9) states in pertinent part:

    (9) The term "neglected child" means a child:
    . . .
    (C) whose parent, guardian, or other custodian is unable to discharge his or her responsibilities to and for the child because of incarceration, hospitalization, or other physical or mental incapacity; or
    . . .
    (F) who has received negligent treatment or maltreatment from his or her parent, guardian, or other custodian.

disposition hearing date to determine proper placement for the children.[5]

The next day, M.K.'s counsel filed a motion to undo the stipulation, dismiss the neglect petition and close the neglect case against M.K. on the grounds that 1) the stipulation was legally defective because it was signed by a party, E.K., who was not named in the neglect petition; and 2) the stipulation prejudiced M.K. by allowing the court to assert jurisdiction over the children without giving her the right to defend against the government's neglect charges.[6] At an April 5, 1996 motions hearing, the court denied the motion, largely on the ground that neither M.K. nor her counsel voiced any opposition to the stipulation when it had been tendered at the March 4, 1996 hearing. Although the court denied the motion, it did agree to hold a full evidentiary hearing on the issue of proper placement, including possible placement with M.K., and, if necessary, to certify the case to another Superior Court judge for review following the disposition. M.K. supported the court's proposal to hold a full evidentiary hearing on the issue of disposition, but her counsel also noted on the record that M.K. still objected to the jurisdiction of the court over the children based on the alleged improper stipulation.[7]

Following a full evidentiary hearing[8] in which the trial court considered extensive witness testimony, the deceased mother's notarized statement indicating that she wanted her children to live with their grandfather after her death, a dispositional report and a guardian *ad litem* report, both of which recommended placement with the grandfather, and its own interviews with three of the six children, all of whom requested placement with their grandfather,[9] the court determined that it was in the best interests of the children to remain with E.K., the grandfather.[10]

---

5. *See* Super. Ct. Neg. R. 21(a) (1999) (providing that prior to entering a disposition order, the court shall hold a hearing).

6. M.K. acknowledged, however, that the government had decided it would not proceed against her on the neglect petition. At the motions hearing, the government confirmed that after it amended the petition to allege that the children were neglected due to the death of the mother, it dropped the neglect charges against M.K.

7. At a May 22, 1996 motions hearing, the trial court reconsidered the stipulation of neglect and again determined that it was not improper, stating:

But beyond [M.K.'s failure to object,] ... [the stipulation] just says that the mother died. That's all. And that, you know, there's no parent available to care for the children and that continues to be true and that's why I think this dispute probably can be litigated as a placement dispute and I think that's really what it is.

At the request of M.K.'s counsel that the original neglect petition not be given any weight at the disposition hearing, the trial court agreed not to make any negative inferences from the fact that a petition had been filed alleging neglect by M.K.

8. The disposition hearing was held over several days in July, August and September 1996, and the court made its final ruling on September 6, 1996.

9. In describing the interviews with the children, the trial court noted:

The children volunteered instances of physical abuse of either them or their siblings. They expressed negative feelings about being with their grandmother. And, their description of incidence [sic] of physical discipline was wholly consistent with the testimony the Court had heard during the hearing about their earlier description of incidence [sic] to either the guardian *ad litem* or the social workers.

10. After evaluating M.K.'s fitness as a caretaker, the court concluded:

I do believe that [M.K.] has wholly failed to show herself to be a better caretaker, or even to show that placement of the children with her would be ... appropriate....

In discussing M.K.'s credibility, the court stated:

I found [M.K.'s] demeanor and the content of her testimony to raise issues about her candidness and honesty.... [M.K] showed herself to be out of control and to have a bad temper at various points during the hearing.... There are many aspects to her behavior in the court to cause the Court difficulty in viewing her as a fit caretaker for children, and viewing her as someone who could exercise the judgment and con-

## II.

On appeal, M.K. argues that the trial court incorrectly upheld a legally defective stipulation. Her claim that the stipulation is legally defective is grounded in the language of the stipulation, which indicates that the children were neglected due to the death of their mother, but does not reflect that M.K acted as the children's custodian after the mother's death. In addition, M.K. complains that the stipulation is legally defective because it was not signed by her, the only party named in the original neglect petition.

### A. *Legal effect of death of a parent.*

■ We first address M.K.'s claim that the stipulation is legally defective because the death of a parent is insufficient to establish neglect where the children are cared for by a custodian unless the custodian is deemed to be neglectful. D.C.Code § 16–2301(9)(C) provides that a neglected child is one whose "parent, guardian, *or other custodian* is unable to discharge his or her responsibilities." (Emphasis added.) The statute defines a "custodian" as someone "who is acting *in loco parentis.*" D.C.Code § 16–2301(12)(B); *see Fuller v. Fuller,* 247 A.2d 767, 770 (D.C.1968) (defining the term *in loco parentis* as one who assumes parental status and discharges parental duties). Where a custodian or another parent or guardian is in place, the death of a parent does not automatically render a child "neglected," unless that other parent, guardian or other custodian is adjudged to have neglected or maltreated the child. *See* D.C.Code § 16–2301(9)(F) (defining "neglected child" as one "who has received negligent treatment or maltreatment from his or her parent, guardian, or other custodian"); *In re B.C.,* 582 A.2d 1196, 1198–99 (D.C.1990) (describing the proper inquiry as whether "those who have the legal obligation to insure the children's welfare have not exercised that obligation for any nonfinancial reason," and concluding that "the only relevant consideration

trol that is necessary in dealing with a

[in a neglect proceeding] is the child's condition"); *cf. In re E.H.,* 718 A.2d 162, 169 (D.C.1998) (requiring, in case of mentally ill parent, that government must show parent's inability to care for the child due to the mental incapacity as "[n]eglect proceedings are remedial and focus on the child") (citations omitted).

■ Even assuming that M.K. had been her grandchildren's custodian, caring for them *in loco parentis* after their mother's death, the time relevant to our inquiry is when the stipulation was accepted by the trial court. At that time M.K. no longer had any caretaking responsibilities for the children and, therefore, could not be their "custodian" under the statute. Although it could be argued that, at the time of the hearing when the stipulation was entered, the children were not neglected because they had been placed under the care of E.K., who was acting *in loco parentis* pursuant to court order, *see In re B.C.,* 582 A.2d at 1198 (defining "custodian" as one who has "the legal obligation to insure the children's welfare"), the trial court accepted the neglect stipulation based on his counsel's representations that E.K. was unable to adequately care for his grandchildren without government assistance. Absent evidence to the contrary, the trial court did not abuse its discretion in accepting the neglect stipulation based on the death of the mother and the inability of the present custodian to provide proper care for the children, and in exercising its jurisdiction and proceeding to a hearing on the proper placement of the children. *See In re D.R.,* 718 A.2d 149, 151–52 (D.C.1998) (noting that in neglect proceedings, the "trial court's role is to act as *parens patriae,*" which means that " 'the court must act to protect the best interests of the child,' " and appellate court does not reverse the trial court's determination of where the best interests of the child lie except for abuse of discretion (citations omitted)); *In re J.J.Z.,* 630 A.2d 186, 193 (D.C.1993),

number of children.

*cert. denied sub nom. B.S. v. District of Columbia,* 511 U.S. 1072, 114 S.Ct. 1651, 128 L.Ed.2d 370 (1994) (noting "historic concept" that court has *parens patriae* role, to be exercised in the best interests of the child, that exists even before adjudication of neglect).

### B. *Absence of M.K.'s signature on the stipulation.*

■ M.K. also maintains that the stipulation of neglect is legally defective because it was not signed by her, the only party named in the original neglect petition. The trial court recognized that M.K. did not sign the stipulation, but concluded that because she failed to object to the stipulation when it was tendered in open court, she was precluded from objecting to it after the fact. Although M.K.'s counsel argued that she did not review the stipulation before it was announced in open court and did not understand its implications until after it was accepted by the court,[11] the trial court determined that it was counsel's responsibility to object or to ask for more time to review the stipulation if needed.[12] We find no abuse of discretion in the trial court's decision to uphold the stipulation based on M.K.'s failure to make a timely objection. *See* Super. Ct. Neg. R. 17(a) ("A stipulation may be used in lieu of the fact-finding hearing where the parties agree upon a set of facts which are sufficient to support a finding of neglect...."). As noted earlier, at the time the stipulation was accepted, it was signed by those with legal relationships to the children: E.K., the guardian *ad litem*, and the government; M.K. was not a "custodian" or "guardian" of the children and was no longer charged with neglect of the children. Thus, their neglected status under

the statute was not dependent on M.K. As a result, it is doubtful that M.K. had any standing to object to the stipulation of neglect, which effectively terminated the neglect proceeding against her, as opposed to her being a party in the subsequent disposition phase as someone interested in *becoming* a custodian of the children. *Cf. In re Dom. L.S.,* 722 A.2d 343, 346 (D.C. 1998) (noting that neglect and disposition hearings are two separate proceedings "with a different focus"); *In re C.V.,* 719 A.2d 1246, 1248 (D.C.1998) (reversing trial court decision to terminate parental rights of putative father who was not made a party to the earlier neglect stipulation).

### C. *Prejudice*

■ Even assuming an infirmity in the neglect stipulation, there would be no abuse of discretion warranting reversal as there is no evidence that M.K. was prejudiced by the court's acceptance of the stipulation of neglect. *See Johnson v. United States,* 398 A.2d 354, 367 (D.C.1979) (establishing there is no abuse of discretion absent evidence of prejudice). M.K. maintains that she was prejudiced by the stipulation because she was precluded from contesting the neglect allegations in the original petition. These allegations, she asserts, caused her to lose custody of her grandchildren, thereby entitling her to a trial on the neglect allegation. We disagree that the stipulation had any of the claimed adverse effects. First, the stipulation did not cause M.K. to lose custody of her grandchildren; the grandchildren had been removed from her care more than a year before the stipulation after the trial court found probable cause that the children were neglected while in her care.

11. M.K. echoed her counsel's concern, indicating that at the time the stipulation was proposed, she did not know what it meant.

12. The trial court was initially concerned by the fact that E.K. entered into the stipulation when he was not a named party in the neglect case, but the court's concern was assuaged when the government stated that it had

amended the petition to eliminate M.K. as a named party. We further note that E.K., who at the time he signed the stipulation had temporary legal custody of the children as a result of the finding of probable cause that M.K. had neglected the children, was a "custodian" within the meaning of D.C.Code § 16-2301(12). *See In re B.C.,* 582 A.2d at 1198.

Instead, the stipulation effectively terminated the neglect proceeding against M.K., and based the children's neglected status on the death of their mother and their impecunious grandfather. Moreover, even though the stipulation truncated the neglect proceedings against M.K., she was not left without recourse to contest allegations that she had neglected her grandchildren at the subsequent disposition hearing. The trial court conducted a full evidentiary hearing to determine the best placement for the children, during which M.K. had ample opportunity to demonstrate her ability to care for her grandchildren.[13] At the disposition hearing, the trial court was guided by the "best interests of the child[ren]," the same standard that governs all neglect proceedings. *See* D.C.Code § 16–2320(a); *In re B.C.*, 582 A.2d at 1198. M.K. does not indicate how this hearing was any different, in a manner prejudicial to her, from the hearing that would have followed if there had been no stipulation.[14] Given that as a result of the stipulation the government dropped the neglect petition against M.K. and that the trial court subsequently conducted a full evidentiary hearing at which M.K. had the opportunity to contest the substance of her alleged

neglect, we see no prejudice to M.K. resulting from the court's refusal to undo the stipulation that the children were neglected within the meaning of the statute. *See In re B.C.*, 582 A.2d at 1198 (noting that "father's aversion to the potential personal implication of the court's finding that his children are neglected is not the relevant issue [in a neglect proceeding, as the relevant issue] is the condition of the children, *i.e.*, whether the children are without the statutory requirements for whatever nonfinancial reason").[15]

## III.

For the foregoing reasons, we conclude that the stipulation was not legally defective and that the trial court did not abuse its discretion in accepting the stipulation and proceeding to the disposition hearing. Accordingly, we [16]

*Affirm.*

13. At the government's request, the court explicitly found, based on evidence presented and M.K.'s behavior in court, that M.K. was not a "fit and proper" caretaker. See *supra* note 10.

14. If anything, M.K.'s position was enhanced by the stipulation because she no longer had to contest the neglect allegations at the hearing. In response to M.K.'s request that the trial court make no negative inferences from the fact that she was the party originally named in the neglect petition, the trial court noted that it gave no weight to that fact. Moreover, had the government pursued the neglect petition against M.K., there is no evidence in the record to suggest that M.K. would have prevailed at a fact-finding hearing and regained custody of her grandchildren.

15. In awarding temporary custody to E.K., the trial court did recognize the fact that E.K. rather than M.K. had cared for the children since the probable cause hearing fourteen months earlier, suggesting that M.K. may

have been prejudiced when the children were removed from her custody due to neglect allegations which were subsequently withdrawn. The stipulation, however, did not affect the historical fact that the children were removed from her custody upon a finding of probable cause. Cf. *Johnson v. Washington*, No. 97–FM–1806, 756 A.2d 411 (D.C. July 27, 2000). Further, this was only one factor among many that the trial court considered in rendering its decision. The court relied heavily on witness testimony and its interviews with the children; M.K.'s lack of contact with the children was not a primary factor in the trial court's determination that they should be placed with their grandfather.

16. M.K. also claims that she was denied effective assistance of counsel at the stipulation hearing. See D.C.Code § 16–2304(b)(1) (parent, guardian or custodian is statutorily entitled to representation by counsel "at all critical stages of the [neglect] proceedings"); see also *Cloutterbuck v. Cloutterbuck*, 556 A.2d 1082, 1086 (D.C.1989) (holding that right to

counsel conferred by § 16–2304(b)(1) is "strictly statutory in nature" and limited to its terms). Even assuming that M.K. was entitled to effective counsel under the statute and that M.K.'s counsel provided ineffective assistance by failing to object to the neglect stipulation at the hearing, we find no prejudice for the reasons stated in the text. *Cf. Brown v. United States,* 105 U.S.App. D.C. 77, 80, 264 F.2d 363, 366, *cert. denied,* 360 U.S. 911, 79 S.Ct. 1299, 3 L.Ed.2d 1262 (1959) (noting that trial court error in denying statutory right to proceed without counsel does not warrant reversal absent prejudice).