OPINION OF THE COURT
Raymond J. Barth, J.
The above-captioned proceeding came before this court on February 1, 1978, at which time respondent, Joe Payne, submitted a motion to dismiss the petition as to him on the grounds that the petition failed to allege an offense cognizable by this court and that sections 1012 and 1046 of the Family Court Act are unconstitutional. The court was informed by letter that the Solicitor General would not file an answer or appear in connection with the constitutional challenge.
This article 10 proceeding was commenced on April 26, 1977 by the petition of the Onondaga County Department of Social Services. The petition alleged that respondent, Denise Roman was the mother of Kathy Roman and the person legally responsible for her care. Pete Roman is alleged to be the father of the child. The petition further alleges that "Joe Payne resides with Mrs. Roman and is a person who was and is in a position to inflict corporal punishment upon the child”. Finally, it is alleged upon information and belief that Denise Roman and Joe Payne are responsible for the abuse of the child. The theory behind the petition is that the infant, Kathy, was abused and/or neglected by reason of her receiving fractures of three separate bones and her failure to receive medical treatment for a period of three days to three weeks after receiving these fractures.
Respondent Payne first contends that the petition fails to allege that he is a person legally responsible for the care of the infant within the meaning of subdivision (g) of section 1012 of the Family Court Act and therefore, fails to allege facts sufficient to subject him to the jurisdiction of this court. That section reads as follows: "(g) 'Person legally responsible’ includes the child’s custodian, guardian, any other person responsible for the child’s care at the relevant time. Custodian may include any person continually or at regular intervals found in the same household as the child when the conduct of such person causes or contributes to the abuse or neglect of the child.” Article 10 petitions are required to allege specific facts sufficient to establish that a child is an abused or neglected child under this article. (Family Ct Act, § 1031, subd [a].) The function of this petition is not only to enable the *799 respondents to prepare a defense on the merits, but also to recite the facts upon which the court has jurisdiction to decide the case; this assumes particular importance where the court is one of limited jurisdiction as is the Family Court. (Besharov, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act, § 1031, 1977-1978 Supp.) A well-pleaded complaint in this proceeding should have alleged that Payne was continually or at regular intervals found in the same household as the child during the period in question to establish that he had a custodial relationship to the child and would, therefore, qualify as a person legally responsible within the meaning of the statute. (Family Ct Act, § 1012, subd [g].) The language employed in the petition, that Payne resides with Mrs. Roman is inherently ambiguous and does not affirmatively reveal the necessary statutory relationship. In resolving this motion, every fair inference must be resolved in favor of the legal sufficiency of the petition. (Matter of C.B., 81 Misc 2d 1017.) Moreover, it has been recognized that article 10 petitions are often prepared by lay persons, to the end that the legal sufficiency of such petition has been tested leniently. (Besharov, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act, § 1031, 1977-1978 Supp.) As is customary, the instant petition was prepared by a caseworker in the Children’s Protective Unit of the Onondaga County Department of Social Services. Naturally, this recognition does not grant the Department of Social Services license to submit legally insufficient pleadings. Construing this petition liberally, the court finds it to be minimally sufficient. The allegation of residence is qualified by the statement that respondent Payne is in a position to inflict punishment. The most favorable inference to be drawn from such an allegation is that respondent Payne and the infant, Kathy, shared a common residence during which time both parties were continually or regularly found in the same household. Given that inference, respondent Payne would have the statutory custodial relationship with the child which would provide a jurisdictional basis for this court.
By his second contention, respondent Payne challenges the constitutionality of article 10. Boiled to its essence, his argument is that his due process and equal protection rights, as well as his right against self incrimination, are violated by a child protective system which imposes parental obligations without his consent and places upon him the burden of going *800 forward with evidence when there exists a possibility of a later criminal prosecution for the same acts or omissions. Before proceeding to the merits of this motion, the court notes that, for their part, the Onondaga County Department of Social Services entered a summary denial of the allegations in the movant’s affidavit, thereby failing to provide the court with any assistance in the resolution of this motion. The court regrets that important constitutional questions must be resolved on what is essentially an ex parte motion.
At the outset, respondent Payne maintains that section 1046 (subd [a], par [ii]) of the Family Court Act impermissibly presumes the threshold jurisdictional issue. It has already been established that the petition alleges a statutory custodial relationship between respondent Payne and the child. For the purpose of this motion, the truth of these allegations must be assumed. (Matter of C.B., 81 Misc 2d 1017, supra.) Beyond this motion, however, the jurisdiction of the Family Court will never be presumed and the facts necessary to confer jurisdiction must affirmatively appear in the record. (Matter of Children, 76 Misc 2d 987.) Accordingly, the custodial relationship, which provides the jurisdictional basis is not to be presumed, but rather the burden of proving the same remains on the petitioner.
Respondent Payne contends that he is a "stranger at law” to the child and that the Legislature may not impose parental or custodial duties upon him without his consent. Such duties would presumably be a duty of care to the child and the alleged "duty” to explain the cause of the child’s injuries contained in section 1046 (subd [a], par [ii]) of the Family Court Act. In 1972, the Legislature broadened the concept of a "person legally responsible” to pull within its net persons continually or regularly found in the same household as the child. (L 1972, ch 1015, § 2.) Their intent was clearly to equip the Family Court with a jurisdictional foundation upon which to hear cases where the natural parent’s paramour was responsible for the abuse or neglect of a child. As nonconventional living arrangements became increasingly prevalent, it became necessary to give the children in those situations the same protection as children in the more traditional family unit. The Select Committee on Child Abuse found that: "Increasingly, children are suffering abuse and other maltreatment at the hands of unrelated males living in their mother’s households. Authorities such as Dr. Vincent J. Fontana of the *801 New York City Task Force on Child Abuse and Neglect estimate that as many as 100 children may die, in New York City, at the hands of their mother’s paramour. This bill would enable the Family Court to assert its jurisdiction in an effort to save as many of these and other children as possible.” (NY Legis Ann, 1972, p 23.) The amendment was designed to promote the original purpose of assuming "that the home satisfies at least the minimal requirements of a suitable place for a child to grow.” (Report of Joint Legis Committee on Court Reorganization, Report No. 2, Jan. 30, 1962, p 16.) The 1972 amendment to the act was a rational response to a changing social environment and should not be declared unconstitutional unless it imposes an undue burden upon those persons who are now subject to the authority of the Family Court.
By virtue of being declared a "person legally responsible” within subdivision (g) of section 1012 of the Family Court Act, respondent Payne is subject to the evidentiary rule of section 1046 (subd [a], par [ii]) of the Family Court Act, which provides that "proof of injuries sustained by a child or of the condition of a child of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the care of such child shall be prima facie evidence of child abuse or neglect, as the case may be, of the parent or other person legally responsible”. Respondent contends that this "duty of explanation” is a parental obligation imposed upon him without his consent and thereby infringes upon his due process and equal protection rights.
This statutory rule of evidence did not exist under article 3 of neglect proceedings of the original Family Court Act. The courts were confronted then with the fact that proof of abuse by the parents is often difficult to ascertain insofar as such actions occur within the privacy of the home without outside witnesses. Furthermore, the parents would often unite to protect one another and to resist outside inquiry into the cause of the child’s injury. To insure that the secrecy of the acts themselves would not leave battered children unprotected, the courts redistributed the burden of proof by borrowing the principle of res ipsa loquitur from negligence law. (Matter of S, 46 Misc 2d 161; Matter of Young, 50 Misc 2d 271.) Thus, the condition of the child was said to "speak for itself’, thereby permitting an inference of neglect to be drawn *802 from proof of the child’s age and the nature of his injuries. Article 3 was repealed in 1970 and replaced by the present article 10 proceeding which codified the rule of evidence employed by the courts. Today, once a prima facie case of child abuse or neglect is established, the burden of coming forward with proof shifts to the respondent. (Matter of Tashyne L., 53 AD2d 629.) Such a shifting of the burden does not offend the due process to which respondent is entitled. Even in a criminal prosecution, it is permissible to cast a like burden on the defendant if the prosecutor has proved enough to make it just to shift the burden, or, based upon a balancing of opportunities for knowledge, if the shifting of the burden would aid the accuser without subjecting the accused to hardship or oppression. (Morrison v California, 291 US 82, 88-89; Speiser v Randall, 357 US 513.) With respect to civil cases, "[legislation declaring that proof of one fact or group of facts shall constitute prima facie evidence of an ultimate fact in issue is valid if there is a rational connection between what is proved and what is to be inferred.” (Western & Atlantic R. R. v Henerson, 279 US 639, 642.) Based upon the experience of the Family Court and others, there is clearly a rational connection between proof of unusual injuries which bear the hallmark of the child abuse syndrome and the inference of child abuse. (See, generally, Heifer & Kempe, The Battered Child [2d ed]; People v Henson, 33 NY2d 63.)
The court is of the opinion that neither subdivision (g) of section 1012 nor section 1046 (subd [a], par [ii]) of the Family Court Act serves to deprive respondent of due process or equal protection of the law. Contrary to respondent’s assertions, the jurisdictional basis of a custodial relationship is not presumed, but rather is a matter to be proved by petitioner. The decision of the Legislature to subject a person in respondent’s position to the jurisdiction of this court was a rational one and based upon expert testimony revealing the need to protect children living in nonconventional family units. The statute is not an imposition of parental obligations per se. Rather, it requires persons entering into living arrangements which involve children to refrain from inflicting injury upon a child and to act in a manner which will not impair the child’s physical, mental or emotional condition. The welfare of the child is the objective in an article 10 proceeding and its need for protection should not be made dependent upon the living arrangements of the custodial parent that are beyond the control of *803 the child. The statute subjects all persons living in a household in which children are present to the jurisdiction of the Family Court when the child is alleged to be abused or neglected. The statute applies evenly and fairly to all persons who are so situated. While it should be noted that a strong presumption of constitutionality exists with respect to a duly enacted statute, the court finds that the procedure designed to assure the due process right of the abused and neglected does not tread upon respondent Payne’s constitutional guarantees of due process and equal protection of the law. (See McKinney’s Cons Laws of NY, Book 1, Statutes, § 150.)
Respondent further contends that section 1046 (subd [a], par [ii]) of the Family Court Act infringes upon his Fifth and Fourteenth Amendment rights against self incrimination. The argument is that since criminal prosecution for the alleged child abuse is not precluded by the instant proceeding in Family Court (Family Ct Act, § 1014), the so-called "duty of explanation” contravenes respondent’s right to remain silent. While the Family Court may grant a respondent testimonial immunity (Family Ct Act, § 1014, subd [d]), that issue is not before the court.
The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself’. (US Const, 5th Amdt) The fact that an article 10 proceeding is considered civil rather than criminal is not dispositive of this issue. (Cf. Matter of Orzo, 84 Misc 2d 482; but, see, Matter of Fred S. 66 Misc 2d 683.) "The privilege is not ordinarily dependent upon the nature of the preceding in which the testimony is sought or is to be used. It applies alike to civil and criminal proceedings, wherever the answer might tend to subject to criminal responsibility him who gives it.” (McCarthy v Arndstein, 266 US 34, 40; accord Kastiger v United States, 406 US 441, 445.) Nevertheless, respondent’s argument must fail because of the absence of any compulsion. The Fifth Amendment privilege is fulfilled when the person is guaranteed the right "to remain silent unless he chooses to speak in the unfettered exercise of his own will”. (Malloy v Hogan, 378 US 1, 8; Miranda v Arizona, 384 US 436, 460.) This is not a situation where a failure to testify will cause a penalty to be exacted. (See Lefkowitz v Turley, 414 US 70.) Rather, as in a criminal case, the decision to testify or not in the presentation of a defense remains in the unfettered discretion of the respondent. The decision is a tactical, not a *804 compelled one. A defense to the allegations may be established by alternative methods which do not require the respondent’s testimony. Accordingly, the court finds section 1046 (subd [a], par [ii]) of the Family Court Act to be constitutional in this respect.
The remaining issue for consideration is whether to sever the proceedings against respondent Payne and respondent Roman. Respondent Payne alleges generally that he will be severely prejudiced by the admission of evidence which would be inadmissible, but for the presence of respondent Roman. Since a severance creates a multiplicity of actions and taxes limited judicial resources some useful purpose must be served to justify the granting of respondent’s motion. (See Noble v Kowalenko, 32 AD2d 703.) The general allegations reveal no greater hardship than when any two corespondents are tried together. Additionally, the risk that inadmissible evidence will be weighed against him is substantially lessened insofar as the respondent will not receive a jury trial. Thus, the court is of the opinion that a severance of the proceeding is not warranted under these circumstances.
It is, therefore, ordered, that respondent’s motion to dismiss is denied in all respects.