465 A.2d 374 (1983)
In the Matter of L.E.J.
Appeal of T.J.
No. 80-1250.
District of Columbia Court of Appeals.
Argued September 8, 1982.
Decided August 2, 1983.
*375 William R. Robertson, Washington, D.C., for appellant. Larry D. Sharp, Washington, D.C., was on the brief for appellant.
Felice Busto, Washington, D.C., with whom Rebecca Hudsmith, Washington, D.C., was on the brief, for appellee L.E.J.
Leo N. Gorman, Asst. Corp. Counsel, Washington, D.C., with whom Judith W. Rogers, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellee Dist. of Columbia.
Before NEBEKER, PRYOR and TERRY, Associate Judges.
TERRY, Associate Judge:
This is an appeal from a finding of neglect by the Family Division of the Superior Court and an order placing L.E.J., an infant, in the temporary custody of the Social Rehabilitation Administration. Appellant contends that D.C.Code § 16-2316(c) (1981), which permits a trial court to draw an inference of neglect from certain evidence, was unconstitutionally applied to her and is unconstitutionally vague. We reject both of appellant's arguments.

I
On the evening of August 30, 1979, appellant brought her five-week-old son, L.E.J., to the Howard University Hospital emergency room for treatment of fractures of both arms. Appellant and her child returned the following day for further treatment by Dr. Charles Blake, the hospital's Director of Ambulatory Pediatrics. After an examination and review of the X-rays, *376 Dr. Blake concluded that "the injury had to have been inflicted on the infant by someone else." This view was supported by Dr. Cornelius Merrick, a radiologist on the hospital staff, who stated that it was unusual to see multiple fractures in children of this age.
Appellant never provided a consistent account of how the injuries to her son occurred. Dr. Blake testified that because appellant failed to offer an explanation for these injuries, he was obligated to report the incident to the police. Dr. Mercy Thomaskutty, the attending physician in the emergency room, Frank Evans, a nurse at the hospital, and Metropolitan Police Detective Leon Lanier, who interviewed appellant at the hospital on the evening of August 30, all testified that appellant told them that her son's injuries had occurred prior to August 30. Appellant denied making any such statement.
Appellant told the court that she left L.E.J. in the care of her older sister on the afternoon of August 30 while she went to bring her grandmother home from the hospital.[1] According to appellant, she noticed for the first time a tenderness in her son's arms after she returned with her grandmother. Although her grandmother urged appellant to take the child for medical attention, appellant instead took L.E.J. to visit several of her girl friends who lived in a nearby apartment complex.
Appellant's friends testified that they saw appellant and her child L.E.J. late in the afternoon of August 30. According to their testimony, appellant explained that the soreness they noticed in the child's arms was due to a shot he had received earlier that day at the Marie Reeves Clinic. The clinic, however, had no record of treating L.E.J. on that date.[2]
Appellant filed a motion in the trial court seeking to have D.C.Code § 16-2316(c) (1981) declared unconstitutional on grounds similar to those urged here on appeal.[3] After listening to arguments by both sides, the court concluded that the inference created by section 16-2316(c) was permissive, not mandatory, and was rationally related to a legitimate state goal. Accordingly, the court denied appellant's motion.
The case then proceeded to trial on the neglect petition filed by the Corporation Counsel. The court took the matter under advisement at the conclusion of the trial, and subsequently it entered an order finding L.E.J. to be a neglected child and directing that he be committed to the custody of the Social Rehabilitation Administration for a period not to exceed two years. Three months later the court further ordered that L.E.J. be placed in a foster home.

II
Appellant contends that D.C.Code § 16-2316(c) was unconstitutionally applied to her because there was no rational connection between the facts proved at trial and the inference of neglect permitted by the statute.[4] It is well established that the constitutionality of a statutory presumption or inference is dependent upon the "rationality of the connection `between the facts proved and the ultimate fact presumed.'" United States v. Gainey, 380 U.S. 63, 66, 85 *377 S.Ct. 754, 757, 13 L.Ed.2d 658 (1965) (citation omitted); see Turner v. United States, 396 U.S. 398, 403-405, 90 S.Ct. 642, 645-646, 24 L.Ed.2d 610 (1970); Leary v. United States, 395 U.S. 6, 32-36, 89 S.Ct. 1532, 1546-1548, 23 L.Ed.2d 57 (1969); United States v. Romano, 382 U.S. 136, 139, 86 S.Ct. 279, 281, 15 L.Ed.2d 210 (1965); Tot v. United States, 319 U.S. 463, 467-468, 63 S.Ct. 1241, 1244-1245, 87 L.Ed. 1519 (1942); cf. United States v. Johnson, 140 U.S.App. D.C. 54, 62, 433 F.2d 1160, 1168 (1970). In the instant case, the facts proved were the age of the child (five weeks) and the existence of serious, unexplained injuries (two broken arms). The inference made was one of neglect. We believe there was a "rational connection," Tot v. United States, supra, 319 U.S. at 467, 63 S.Ct. at 1245, between the facts proved and the inference which D.C.Code § 16-2316(c) permitted the trial court to draw.[5]
The difficulty of obtaining direct evidence in child abuse or neglect proceedings is well documented. In re Roman, 94 Misc.2d 796, 405 N.Y.S.2d 899, (N.Y.Fam.Ct. 1978); In re Young, 50 Misc.2d 271, 270 N.Y.S.2d 250, (N.Y.Fam.Ct.1966); In re S, 46 Misc.2d 161, 259 N.Y.S.2d 164 (N.Y.Fam. Ct.1965); Smith v. Smith, 278 N.W.2d 155 (S.D.1979); In re S.J.Z., 252 N.W.2d 224 (S.D.1977); Brown, Fox & Hubbard, Medical and Legal Aspects of the Battered Child Syndrome, 50 CHI-KENT L.REV. 45, 69-70 (1974); Fraser, A Pragmatic Alternative To Current Legislative Approaches To Child Abuse, 12 AM.CRIM.L.REV. 103, 117 (1974); Paulsen, The Legal Framework for a Child's Protection, 66 COLUM.L.REV. 679, 699 (1966). Because of the child's tender age, he or she is often unable to testify as to the source of any injuries. The child's parents obviously have much to lose and will not come forward with evidence which could jeopardize their custody of the child or expose them to potential criminal liability. Finally, child neglect proceedings are generally brought by the state, which rarely can find a witness to specific acts of abuse or neglect. Courts and legislatures have responded to the growing number of child abuse cases and their attendant evidentiary problems by allowing an inference of neglect to be drawn when the child is a minor and his or her injuries are unexplained.[6]
In In re Roman, supra, the court rejected a similar due process attack on the constitutionality of a statutory inference of child neglect, concluding that "there is clearly a rational connection between proof of unusual injuries which bear the hallmark of the child abuse syndrome and the inference of child abuse." 94 Misc.2d at 802, 405 N.Y.S.2d at 903. Such a connection exists in the instant case as well. The medical testimony established that L.E.J.'s injuries were unusual in a child his age and that they must have been caused by another person. It is precisely such abusive conduct which the state endeavors to prevent by bringing proceedings for abuse and neglect. Considering that "the presumed fact [of neglect] is more likely than not to flow from the proved fact on which it is made to depend," Leary v. United States, supra, 395 U.S. at 36, 89 S.Ct. at 1548, we cannot say that D.C.Code § 16-2316(c) was unconstitutionally applied to appellant.

*378 III
Appellant also argues that D.C. Code § 16-2316(c) is constitutionally void for vagueness. To withstand a vagueness challenge, a statute "must state its standard with adequate clarity and mark sufficiently distinct boundaries for the law to be fairly administered." In re J.S.R., 374 A.2d 860, 862-863 (D.C.1977). However, the specific terms employed in a statute need not be defined with mathematical precision. As long as a person of ordinary intelligence, exercising common sense, can understand and comply with the dictates of a statute, due process is not offended. Broadrick v. Oklahoma, 413 U.S. 601, 607-08, 93 S.Ct. 2908, 2913, 37 L.Ed.2d 830 (1973); United States Civil Service Comm'n v. National Ass'n of Letter Carriers, 413 U.S. 548, 575-580, 93 S.Ct. 2880, 2895-2897, 37 L.Ed.2d 796 (1973); United States v. Harriss, 347 U.S. 612, 617, 74 S.Ct. 808, 811, 98 L.Ed. 989 (1954). In determining whether a statute not involving First Amendment freedoms is unconstitutionally vague, we must examine it in light of the particular facts of the case at hand, not some hypothetical situation which may never occur. United States v. Mazurie, 419 U.S. 544, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975).
Appellant complains that the terms "custody" and "injury" as employed in D.C. Code § 16-2316(c) are unconstitutionally vague because neither term is defined with sufficient clarity. According to appellant, the term "custody" must be narrowly construed to mean "within the parent's physical control." We see no reason for such a strained and limited interpretation.
Many courts have had occasion to define the word "custody," all arriving at a definition far more expansive than appellant's narrow reading. Those courts agree that the word "embraces the sum of parental rights with respect to the rearing of a child, including its care." Burge v. City and County of San Francisco, 41 Cal.2d 608, 617, 262 P.2d 6, 12 (1953); see Delgado v. Fawcett, 515 P.2d 710 (Alaska 1973); Trompeter v. Trompeter, 218 Kan. 535, 545 P.2d 297 (1976); Patrick v. Patrick, 17 Wis.2d 434, 117 N.W.2d 256 (1962); 59 AM.JUR.2d Parent and Child § 25 (1971). We find these authorities persuasive.
Had Congress intended section 16-2316(c) to pertain only to parents in actual control of their children at the time the unexplained injury occurred, it undoubtedly would have said so. Instead, Congress chose to use the more general term "custody" which refers to the entire bundle of parental rights and responsibilities. In D.C. Code § 16-2301(21) (1981) "legal custody" is defined as including:
(A) physical custody and the determination of where and with whom the minor shall live;
(B) the right and duty to protect, train, and discipline the minor; and
(C) the responsibility to provide the minor with food, shelter, education and ordinary medical care.
Surely the more general term "custody" does not mean less than this. We hold, therefore, that the word "custody" as employed in D.C.Code § 16-2316(c) is not unconstitutionally vague and that it means at least as much as "legal custody" in section 16-2301(21).[7]
Nor do we believe that the term "injury" as employed in section 16-2316(c) suffers from any lack of precision. We have stated too often to require repetition that the words of a statute should be construed according to their ordinary sense and with the meaning commonly attributed to them. E.g., Tuten v. United States, 440 A.2d 1008, 1013 (D.C.1982), aff'd, ___ U.S. ___, 103 S.Ct. 1412, 75 L.Ed.2d 359 (1983); Davis v. United States, 397 A.2d 951, 956 *379 (D.C.1979); United States v. Young, 376 A.2d 809, 813 (D.C.1977); Berkley v. United States, 370 A.2d 1331, 1333 (D.C.1977). The type of injuries supporting a finding of neglect will, of necessity, vary from case to case. However, in our view, persons of ordinary intelligence should have no difficulty ascertaining what type of injury is the result of neglect. Two broken arms are significantly different from a bump on the forehead, for example, and would warrant different inferences as to their origin.
We find no constitutional infirmity whatever in D.C.Code § 16-2316(c).
Affirmed.
NOTES
[1] Appellant's sister, who also had a small son, testified that L.E.J. slept the entire two hours she cared for him.
[2] Appellant told Detective Lanier that the last time her child had been to a clinic was on August 17, not August 30.
[3] D.C.Code § 16-2316(c) (1981) provides:

Where the petition alleges a child is a neglected child by reason of abuse, evidence of illness or injury to a child who was in the custody of his or her parent, guardian, or custodian for which the parent, guardian or custodian can give no satisfactory explanation shall be sufficient to justify an inference of neglect.
[4] Specifically, appellant contends that there was no showing that she was present at the time the injury occurred, that she left L.E.J. in a dangerous or unsafe condition, or that L.E.J. had a prior history of abuse or neglect. Although such additional evidence would obviously have been helpful and relevant under D.C.Code § 16-2316(c), it was not required for the court to infer neglect.
[5] While the Supreme Court cases cited here deal for the most part with statutory presumptions, their reasoning applies a fortiori to mere inferences, which require a lesser degree of proof. If a "rational connection" is all that is needed to sustain a presumption, then surely it will sustain an inference as well.

In Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), the Supreme Court held that a state must present "clear and convincing" evidence of neglect or abuse before terminating a parent's right to the custody of a child. The higher standard of proof imposed by Santosky, however, need not be met here because this case involves only a temporary suspension, not a permanent deprivation, of parental rights. See id. at 758-759, 102 S.Ct. at 1396-1397.
[6] We note that D.C.Code § 16-2316(c) is merely a codification of the common law. See, e.g., In re S, supra. Appellant's counsel conceded below that a court would be able to infer neglect without the aid of a specific statute as long as the inference was supported by the facts.
[7] Courts have not been reluctant to differentiate between the terms "custody" and "control" in the area of domestic relations. See, e.g., In re S.D., 549 P.2d 1190 (Alaska 1976); Appeal in Pima County, Juvenile Action No. J-46735 v. Howard, 112 Ariz. 170, 540 P.2d 642 (1975); Hall v. Los Angeles County Dep't of Adoptions, 47 Cal.App.3d 898, 121 Cal.Rptr. 223 (1975); Mangene v. Aetna Life Insurance Co., 31 Conn. Sup. 271, 328 A.2d 720 (Conn.C.P.1974).