777 A.2d 265 (2001)
In re C.C.J. & B.K.J., Appellees.
N.J., Appellant.
Nos. 98-FS-383, 98-FS-384.
District of Columbia Court of Appeals.
Argued June 1, 2001.
Decided July 26, 2001.
*266 Harry Goldwater, Washington, for the appellant.
Judith A. Lovelace, appointed by the court for appellees, and Carol A. Dalton, Washington, who filed the brief for appellees.
Before SCHWELB, FARRELL, and RUIZ, Associate Judges.
RUIZ, Associate Judge:
Appellant, N.J., appeals from the trial court's finding that his two children were neglected under D.C.Code § 16-301(9)(A) (1997 & Supp.2000) (a child "abandoned or abused" by parent).[1] Based on the testimony *267 of the children's examining physician and the lack of parental explanation for observed injuries suggesting sexual abuse, the trial court ruled that the government proved neglect by a preponderance of the evidence. Appellant contends the evidence was insufficient for a finding of neglect. We affirm.

FACTUAL SUMMARY
On September 6, 1996, Ms. Streeta Yarborough, a third-grade teacher at Clark Elementary School, discovered that C.C.J. had written in the notebook of another student (a boy), "I suck my Daddy's dick last night. My father's real sexy. I'm truly gay with my father." Ms. Yarborough contacted B.J., the mother of C.C.J., and requested that she confer with the school counselor. The mother responded by sending a note apologizing for C.C.J.'s behavior. After additional efforts at contacting the mother failed, the school contacted the police.
On October 3, 1996, Detective Proctor contacted B.J. to request that the children, C.C.J. (age 9, at the time of trial), and B.K.J. (age 10, at the time of trial), be taken to the Children's Advocacy Center (CAC) for an interview. The children were taken to the CAC the following day, where Detective Proctor overheard C.C.J. say to B.K.J., that "mommy told us to watch what we say." Detective Proctor instructed the mother to take the children to a doctor for a physical examination to rule out the possibility of sexual abuse.
Detective Proctor subsequently contacted D.C. General Hospital to determine if the parents brought the children in for examinations, but discovered that they had not done so. The detective was unable to contact appellant or his wife during the following two months.[2] On December 9, 1996, C.C.J., was brought to D.C. General Hospital for an examination by Dr. Howard Wood, who, after a cursory examination, found no evidence of vaginal penetration, scrapes, or tears.
In April 1997, the government filed a petition alleging neglect by the parents and, following a finding of probable cause, the children were placed in the custody of their maternal grandmother. On May 23, 1997, the children were examined by Dr. Orr, an expert in pediatric medicine and sexual abuse of children.
Dr. Orr found abnormalities in the children's genitalia and opined that they were consistent with sexual abuse due to "chronic genital manipulation."[3] During the examination of C.C.J., Dr. Orr found that the appearance of "the hymen is consistent with some external disruption of the integrity of the hymen." With respect to B.K.J., Dr. Orr found her genital area "remarkably abnormal [in] that it is consistent with some external force or external trauma to interrupt the normal integrity of what the hymen should have looked like in a child her age." In both cases, Dr. Orr concluded that the injuries were inconsistent with bed-wetting, infection, bicycle riding, or self-infliction.
After five months of being in the care of the grandmother, Dr. Orr performed another examination of the girls. She found that the "rough, reddened look that was there in May was completely resolved." *268 Dr. Orr concluded that the vaginal area was "healing or repairing itself."
The trial court found that the government had demonstrated by a preponderance of the evidence that the children were abused. The court held that "[t]he circumstances collectively support the conclusion that there are unexplained injuries in the nature of sexual abuse, given the youth of the children and the fact that they were in their parents' care. It is not unreasonable to expect the parents to be able to offer some plausible cause for the injury. The parents have not done so and the Court finds the children have been abused under D.C.Code § 16-2301(9)(A)."

ANALYSIS
"In a child neglect proceeding, the District has the burden of proving by a preponderance of the evidence that a child is neglected within the meaning of D.C.Code § 16-2301." In re E.H., 718 A.2d 162, 168 (D.C.1998). If a claim of evidentiary insufficiency is raised, the "judgment may not be set aside except for errors of law unless it appears that the judgment is plainly wrong or without evidence to support it." Id. at 168. "[W]e must view the evidence in the light most favorable to the District and draw every reasonable inference in the District's favor." Id. at 168-69.
Appellant asserts that there was insufficient evidence to find either (i) that the children were abused by their parents or that the parents failed to make reasonable efforts to prevent abuse, under D.C.Code § 16-2301(23) (1997 & Supp.2000), or (ii) that they suffered injury or illness sufficient to warrant an inference of neglect or to provide notice of injury or illness to the parents, under D.C.Code § 16-2316(c) (1997). We disagree and conclude that the evidence was sufficient to support an inference of neglect. We turn first to the relevant statutory provisions.
D.C.Code § 16-2301(9)(A), provides:
The term "neglected child" means a child who has been abandoned or abused by his or her parent, guardian, or other custodian.
D.C.Code § 16-2301(23), provides:
The term "abused", when used with reference to a child, means a child whose parent, guardian, or custodian inflicts or fails to make reasonable efforts to prevent the infliction of physical or mental injury upon the child, including excessive corporal punishment, an act of sexual abuse, molestation, or exploitation, or an injury that results from exposure to drug-related activity in the child's home environment.
D.C.Code § 16-2316(c), provides:
Where the petition alleges a child is a neglected child by reason of abuse, evidence of illness or injury to a child who was in the custody of his or her parent, guardian, or custodian for which the parent, guardian or custodian can give no satisfactory explanation shall be sufficient to justify an inference of neglect.
This court has held that an inference of neglect under D.C.Code § 16-2316(c) is "dependent upon the `rationality of the connection between the facts proved and the ultimate fact presumed.'" In re L.E.J., 465 A.2d 374, 376 (D.C.1983) (quoting United States v. Gainey, 380 U.S. 63, 66, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965)). In In re L.E.J., we held that an inference of neglect was warranted where a five-week old child had two broken arms and the parents provided no rational explanation for the injury. See In re L.E.J., 465 A.2d at 377. Noting that child abuse cases often lack direct evidence of the abuse, we stated that "[c]ourts and legislatures have responded to the growing number of child *269 abuse cases and their attendant evidentiary problems by allowing an inference of neglect to be drawn when the child is a minor and his or her injuries are unexplained." Id.; see also In re Tara H., 129 Misc.2d 508, 494 N.Y.S.2d 953, 958 (N.Y.Fam.Ct.1985) (finding that in cases involving sexual abuse, corroborating evidence is particularly difficult to uncover); In re Roman, 94 Misc.2d 796, 405 N.Y.S.2d 899, 903 (N.Y.Fam.Ct.1978) (suggesting that in child neglect cases, since direct evidence is hard to come by, the child's age and the nature of his or her injuries permit an inference of neglect).
We have also held that in civil cases alleging neglect, the focus is on the best interest of the child, rather than the culpability of the parents, and thus neglect statutes authorizing state intervention should be "liberally construed to enable the court to carry out its obligations as parens patriae." In re S.G., 581 A.2d 771, 778 (D.C.1990) (discussing that neglect statutes are remedial statutes designed to secure the well-being of children and thus should be liberally construed); see also In re B.C., 582 A.2d 1196, 1198 (D.C.1990) (discussing that the primary focus of neglect statutes is the welfare of the allegedly neglected children). In In re S.G., we affirmed the trial court's determination that because of a parent's abusive conduct towards one child, the child's siblings could also be in danger of abuse and thus should be removed from the home. See In re S.G., 581 A.2d at 780. We noted that the child's interest is of foremost importance in these cases, and "it is also the function of the trial court [in child protective proceedings] to determine not only whether neglect or far more serious child abuse exists, but that it is likely to exist." Id. Deference is due to the trial court's determination of abuse or neglect and we will not "second-guess the trial judge on a very difficult call." Id.
Appellant claims that the nature of the children's injury in this case did not provide the parents with notice such that they could "make reasonable efforts to prevent" the abuse. D.C.Code § 16-2301(23). The statute does not expressly require notice, but we have noted that "persons of ordinary intelligence should have no difficulty ascertaining what type of injury constitutes neglect." In re L.E.J., 465 A.2d at 379. Although a sexual injury may be less conspicuous than the broken arms suffered by the infant in In re L.E.J., evidence of chronic sexual abuse can be such that a reasonable parent would be put on notice to take preventive action. While it may not be so in all sexual abuse cases, we believe it is reasonable for the trial court to find that the types of injuries found on children the age of C.C.J. and B.K.J. would not likely be sustained unless the parents knew or should have known of them. Cf. In re Tara H., 494 N.Y.S.2d at 958 (noting that the doctrine of res ipsa loquitur was applicable to certain cases where the child suffered traumatic injuries and the injuries were not satisfactorily explained by the person responsible for the child's care). Dr. Orr testified that the manipulation of the genitals in the children was "chronic," indicating that both children were abused on more than one occasion. The mother's only explanation was that the wounds were caused from bike riding, a theory that was disavowed by Dr. Orr's testimony. The doctor also observed that after the children were removed from their parents' care, their wounds healed, from which the trial court could infer the parents' responsibility, directly or indirectly, because while the children were in another person's care, they were no longer susceptible to injury.
*270 We perceive no error in the trial court's determination that the children were neglected within the meaning of D.C.Code § 16-2301(9)(A). We hold that the evidence in this case of chronic and unexplained sexual injuries in young children while in the custody of the parents was sufficient to justify an inference of neglect. In doing so, we recognize the difficulty of obtaining direct evidence in these types of cases and that child neglect statutes should be liberally construed in order to protect the child. See In re S.G., 581 A.2d at 778 (discussing the remedial purpose of neglect statutes).
Affirmed.
NOTES
[1] The government initially proffered one count of inadequate care or control of a child under D.C.Code § 16-2301(9)(B) (1997 & Supp.2000), and one count of parental incapacity to discharge the duty of care under D.C.Code § 16-2301(9)(C) (1997 & Supp. 2000). These charges were dropped at trial.
[2] During this period, appellant claims to have lost his job and suffered an eviction from his residence.
[3] Dr. Orr defined "chronic" as more than one incident.