Matter of Shaniyah W. (2006 NY Slip Op 50773(U))

[*1]

Matter of Shaniyah W.

2006 NY Slip Op 50773(U) [11 Misc 3d 1089(A)]

Decided on April 5, 2006

Family Court, Queens County

Richardson, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 5, 2006

Family Court, Queens County
In the Matter of Shaniyah W., Dasire F., and Diamond F., Children Under Eighteen Years of Age Alleged to be Abused by Latisha W. and Sean R., Respondents.
NA 014XX/06

Edwina G. Richardson, J.
On May 7, 2004 the Administration for Children's Services (hereinafter, "ACS") filed child abuse and neglect petitions against the respondents, Latisha W., the children's mother (hereinafter, "Ms. W."), and Sean R., Ms. W.'s paramour (hereinafter, "Mr. R."), on behalf of the children Dasire F., born November 12, 1998, and Diamond F., born July 1, 2001. The petitions allege, in pertinent part, the following:
1. On or about May 6, 2004, the subject child Diamond was diagnosed by Jamaica Hospital with a fracture of the radius and ulna approximately three to four months old. The respondents have failed to provide an explanation consistent with how such injuries could have been caused or which would alleviate their parental culpability.
2. On or about April 30, 2004, Jamaica Hospital diagnosed the subject child Diamond as suffering from an injury of her small intestine. Said injury required the surgical removal of a portion of the intestine. According to her treating physician, such a condition could only have been caused by intentional blunt force trauma to the subject child's abdomen. The respondents have failed to provide an explanation consistent with how the injury could have been caused or which would alleviate their parental culpability.
The petitions claim that as a result of the foregoing alleged acts of the respondents, the child Diamond is an abused child within the meaning of Family Court Act §1012(e) and that based upon the abuse to the subject child Diamond, the subject child Dasire is a derivatively abused child. The petitions further allege that the respondents' acts also constitute child neglect within the meaning of Family Court Act §1012(f).
On the day the petitions were filed, a hearing pursuant to Family Court Act §1027 was held after which the children were remanded to ACS for foster care placement. The subject children have been in foster care to date.
During the pendency of these proceedings, Ms. W. gave birth to another child, Shaniyah W., born on January 11, 2006. Mr. R. is not the father of Diamond and Desire, but he is alleged to be the father of Shaniyah. ACS filed a child abuse/neglect petition regarding Shaniyah based upon the allegations in the original petitions filed regarding Diamond and Dasire. Shaniyah [*2]resides in kinship foster care with her paternal grandmother. The court granted both respondents supervised visitation with all of the children. On consent of all parties, Shaniyah's petition has been consolidated with the already pending petitions regarding Diamond and Dasire.
The fact-finding hearing in this matter was conducted on a number of days commencing August 18, 2004 and ending on January 24, 2006.
Jurisdiction
The Court exercises jurisdiction over Ms. W. based upon her status as the natural parent of all three subject children.
Family Court Act §§1012(e) and 1012(f) permit the Court to exercise jurisdiction over not only parents but also over "persons legally responsible for the child's care." Although Mr. R. is not the parent of Diamond or Dasire and his status as the father of Shaniyah has not been established, his testimony provided the Court with a sufficient basis for finding that he is a person legally responsible for all three children. Pursuant to Family Court Act §1012(g) the definition of a "Person Legally Responsible" includes a "child's custodian, guardian, or any other person responsible for the child's care at the relevant time." The statute also states, "[c]ustodian may include any person continually or at regular intervals found in the same household as the child when the conduct of such person causes or contributes to the abuse or neglect of the child." In his testimony, Mr. R. described himself as a father figure to the children, having bought them food and clothing and cared for them when their mother was at work. He spent nights in the home and slept in the home on a regular basis. He was quite involved with the children's lives prior to the commencement of these proceedings. Furthermore, Mr. R. sought court-ordered visitation with the children throughout the proceedings and identified himself in court as the father of the baby Shaniyah who was conceived during the course of these proceedings. Therefore, the Court finds that he is clearly a person legally responsible for the care of all of the subject children.
Evidence Presented at Fact-Finding Hearing
ACS presented the testimony of Dr. Neil Kutin, a pediatric surgeon, Dr. Sharanjeet Singh, a critical care pediatrician, and Edith Phillips, the ACS caseworker. ACS also submitted medical records from Jamaica Hospital. The respondents both testified in their own behalf and presented the testimony of Dr. Katherine Grimm, a pediatrician. The law guardian presented the testimony of pediatric radiologist Dr. Natalia Dolin.
Summary of the Court's Findings
After carefully reviewing the voluminous medical records submitted into evidence, considering the testimony presented by all the witnesses in this matter, making the necessary credibility determinations, and considering the relevant law, this Court finds that the petitioner has established by a preponderance of the credible evidence that the subject child Diamond was indeed a victim of child abuse. The actions resulting in the harm to Diamond, for which both respondents are being held responsible, place the other children at imminent risk of physical and emotional harm. Therefore the Court finds that Dasire and Shaniyah are derivatively abused children pursuant to Family Court Act §1012.
[*3]Petitioner's Witnesses
Dr. Neil Kutin was ACS's first witness. On the consent of all counsel, the Court qualified Dr. Kutin as an expert in pediatric surgery. Dr. Kutin saw the child Diamond at Jamaica Hospital on April 30, 2004, when Diamond was approximately three years old. Ms. W. brought Diamond to the hospital via ambulance at 9:07 A.M. Diamond was initially mis-diagnosed by emergency-room staff as suffering from acute gastroenteritis. Diamond was admitted to the pediatric unit where her medical condition worsened and, after a review of x-rays taken in the emergency room, she was correctly diagnosed as suffering from a perforated jejunum. She was further diagnosed post-operatively as suffering hemoperitoneum and peritonitis. In layman's terms, the child had what Dr. Kutin referred to as a large hole measuring three centimeters in the middle area of her small intestine. At 4:15 P.M. that day, Dr. Kutin performed a two-hour emergency laparotomy, a surgical procedure performed under general anesthesia in which Dr. Kutin opened Diamond's abdominal cavity, located the perforation, cleaned out debris material, removed a six to seven centimeter portion of the child's damaged intestine, and reconnected her intestine to restore continuity. The results of tests performed on specimen samples taken from the child during her surgery indicated that she also suffered from pancreatitis, which was a condition caused by trauma separate and apart from that inflicted upon the child's intestine. There was no way of determining the date of injury to the pancreas, which healed without need for further surgical intervention. Lab results also confirmed that the child suffered from acute peritonitis.
 Dr. Kutin testified that the child's condition was secondary to blunt trauma. He could not, however, estimate the amount of force necessary to cause such a perforation in the intestine. Dr. Kutin testified that within four to six hours after suffering the trauma, the child would have become irritable, would have likely been unable to eat and drink, would have run a fever and would have been unable to walk because of discomfort in the abdominal area. Dr. Kutin further testified that he believed that the child suffered the trauma at least two and possibly three days prior to the surgery, which was performed on the same day the child was brought to the Jamaica Hospital emergency room for treatment.
Testing conducted on peritoneal fluid which left the child's intestine through the perforation indicated the presence of a large amount of staphylococcus, streptococcus, candida and haemophilus parainfluenza. Although these are normally found in small amounts in the gastro-intestinal tract, the fact that so many organisms were found growing in the child indicated there was a lengthy time period between the creation of the perforation and the time the surgery was performed to correct the problem. According to Dr. Kutin, other evidence, including thickening of the layers in the child's abdomen and the presence of exudate (the body's response to inflammation) indicated that the injury was caused at least two days prior to presentation at the hospital.
After the surgery, a nasogastric tube was installed to provide nutrition to Diamond because she was unable to eat or drink for more than two weeks. The child was placed on a number of different medications during her almost one-month hospital stay. Dr. Kutin testified that possible long term effects of the child's injury and surgery include scars and adhesions forming inside the abdominal cavity as a result of infection and intestinal obstructions that are possible at any time in the child's future. It was Dr. Kutin's opinion that the child's medical [*4]condition was extremely serious and life threatening.
Dr. Kutin testified that on the day of the surgery, shortly after the surgery was completed, he spoke to Ms. W. about Diamond's condition and that Ms. W. told him that she did not notice symptoms in the child until that very day. Neither Ms. W. nor Mr. R. provided an explanation to Dr. Kutin for the trauma Diamond suffered to her abdominal area.
Dr. Sharanjeet Singh also testified on behalf of ACS. Dr. Singh is Director of Pediatric Critical Care at Jamaica Hospital and he was Diamond's attending intensive care pediatrician from the time Dr. Kutin performed the surgery (April 30, 2004) through May 26, 2004, the date Diamond was discharged from the hospital. On May 3, 2004, suspecting possible child abuse, Dr. Singh ordered a skeletal survey (x-rays of the bones) to detect if Diamond had any other injuries. The results of the testing indicated that in addition to the trauma to Diamond's intestine and pancreas, she had healing fractures of the right radius and ulna, which are the parallel bones of the forearm. The fractures were located midway between the hand and the elbow, and Dr. Singh testified that the fracture of the radius and the fracture of the ulna likely occurred during the same traumatic event. He testified that these fractures probably occurred when the child's hand was outstretched, and they could have resulted from a fall. The fractures would have caused significant pain and swelling, would have limited Diamond's use of her right arm, and should have received medical attention including immobilization of the arm by placing a cast on the arm for a period of two to six weeks. Dr. Singh spoke to Ms. W. about the child's healing fractures and Ms. W. had no explanation for the child's injury.
ACS caseworker Edith Phillips also testified in these proceedings. She interviewed both respondents during the course of her investigation in this matter. Neither respondent had an explanation for any of the child's injuries. Ms. Phillips interviewed the subject child Dasire, who was five years old at the time of the interview. Dasire had no information regarding his sister Diamond's injuries, but did report to Ms. Phillips that Mr. R. hits his sister when their mother is not home. Dasire further reported to Ms. Phillips that he told his mother that Mr. R. hit his sister Diamond, and that his mother told Mr. R. not to hit Diamond.
Jamaica Hospital Medical Records
Jamaica Hospital Medical Center records in evidence provided extensive detail of Diamond's lengthy hospital stay. Of particular relevance is a social worker entry dated May 13, 2004 related to Diamond's injuries. The entry indicates that Dasire told his paternal grandmother that Mr. R. hit Diamond in the face and she fell against a television which subsequently fell onto Diamond.
The Respondents' Witnesses
The respondents called Dr. Katherine Grimm as a medical expert witness. On the consent of all the parties, the Court qualified Dr. Grimm as an expert in child abuse and pediatrics. The respondents retained Dr. Grimm to conduct a review of Diamond's hospital records and to provide her opinion as to the child's condition. Dr. Grimm never examined Diamond but she did interview Ms. W. and she reviewed the transcript of Dr. Kutin's testimony. Dr. Grimm agreed with Dr. Kutin's diagnosis that Diamond suffered a perforated intestine. She further agreed that such an injury is rare in three-year-old children and, in this case, it was likely caused by blunt [*5]force trauma. But she disagreed with Dr. Kutin's opinion that Diamond presented at the hospital with alarming symptoms. Because several different diagnoses were suggested while Diamond was in the emergency room, including acute gastroenteritis, gastritis, "acute abdomen" and possible ruptured appendix, Dr. Grimm believed that Diamond's intestinal problem presented as a "slow leak" which would have indicated that the child's symptoms prior to her hospitalization were more subtle than those Dr. Kutin believed to exist. Additionally, Dr. Grimm testified that the mention of ulceration of the mucosa in the medical records caused her to believe that the perforations might have been caused by ulcers. She consulted with a pediatric surgeon at Mt. Sinai hospital who informed her that the most likely cause for the child's injuries was trauma to the abdomen and that ulcers did not cause the perforation. Dr. Grimm further testified that intestinal perforations such as those suffered by Diamond could be caused by a number of medical conditions, but that in this particular case, they were likely caused by trauma.
Both respondents testified in this matter and reported that they provided care for Diamond prior to her hospitalization. They both denied knowing the cause of Diamond's abdominal injuries and arm fractures. Ms. W. testified that she was with her children, three-year-old Diamond and five-year-old Dasire, until nearly 11:00 P.M. on April 29, 2004, the night before she brought Diamond to the emergency room. She testified that at approximately 11:00 P.M. she left the children alone to go to work, expecting that Mr. R. would arrive shortly after she left and that he would care for the children while she worked. Ms. W. testified that Diamond was fine when she left, showing no signs of illness or distress. Mr. R. testified that he knew Ms. W. had left for work and he knew that he was supposed to watch the children during the night. He testified that instead of going to Ms. W.'s home shortly after Ms. W. left for work, he went to his grandmother's home a few blocks away to watch a sports game on television. He testified that he did not go to Ms. W.'s home until nearly 2:00 A.M. He further testified that while he was at his grandmother's home, he called Ms. W. and lied to her pretending that he was actually with the children. He claimed that Diamond was fine when he first arrived at the home and then she became sick and began to vomit. He spoke to Ms. W. over the telephone during the early morning hours and advised her to come home to take Diamond to the hospital. When Ms. W. arrived home in the morning, at her regular time after work, she called an ambulance because she felt her child was very ill.
Law Guardian's Witness
Diamond's law guardian called Dr. Natalia Dolin as a witness. On the consent of all the parties, the Court qualified Dr. Dolin as an expert in pediatric radiology. Dr. Dolin worked at Jamaica Hospital at the time Diamond was brought there. Dr. Dolin testified that she diagnosed Diamond after her presentation at Jamaica Hospital in April 2004 as having a non-acute fracture of the right radius and trauma to and possible non-acute fracture of the right ulna. Dr. Dolin testified that these fractures were healing at the time of the diagnosis and that the injury to the radius likely occurred at the same time as the injury to the ulna. Dr. Dolin further testified that the injury to Diamond's arm would have caused significant pain, swelling, and bruising to the affected area. She testified that the fractures were at least seven to fifteen days old at the time the child presented at the hospital and that it was unlikely that the child exhibited no symptoms from the fracture at the time of injury. A likely cause of such a fracture in a three-year-old is a fall [*6]with an outstretched arm.
Findings of Fact: Expert Testimony
The expert witnessess presented overall similar conclusions. In some areas, Dr. Grimm's opinions differed from those of Dr. Kutin, requiring this Court to make careful credibility assessments. The court fully credits the testimony of Dr. Kutin. He is a highly qualified pediatric surgeon with many years of relevant experience. Dr. Kutin found that blunt force trauma caused the child's perforated small intestine and pancreatitis. The court also fully credits the testimony of Dr. Singh and Dr. Dolin who diagnosed the child's arm fractures. This Court also credits much of the findings and testimony of the respondents' expert, Dr. Grimm. The court finds that she conducted an appropriate review of the medical records and that her findings were mostly supportive of those of Dr. Kutin. Her major area of disagreement is the amount of pain and the severity of the symptoms Diamond would have exhibited prior to her hospital admission. The court does not credit Dr. Grimm's findings in that regard. Dr. Grimm, although a well respected pediatrician and child abuse expert, by her own admission was not sufficiently familiar with pediatric surgery of the type performed on Diamond. She required consultation with a pediatric surgeon regarding the possible causes of the intestinal problems Diamond suffered as well as the significance of the ulcers found. Her testimony revealed that she relied to a great extent upon medical literature for her conclusions, whereas Dr. Kutin testified clearly and credibly from his medical examination of the child, and his findings were based upon his extensive professional experience.
Findings of Fact: Testimony of Ms. W. and Mr. R.
The testimony of both respondents was unpersuasive, not just because it was self-serving, but because it was wholly unbelievable. The expert testimony was that some blunt force trauma injury to Diamond's abdomen had to have occurred at least two days prior to her presentation at the hospital and that such injury, within four to six hours of its occurrence, would have caused the child to become irritable, unable to eat and drink, and unable to walk because of discomfort in the abdominal area. In light of such evidence, the respondents' claim that they were not aware of any injury before the early morning hours of April 30, 2004 was simply incredible. Their failure to offer any explanation for the injury further diminishes their credibility.
The respondents again proved their lack of credibility by testifying that they were not aware of Diamond's arm injury despite the testimony establishing that Diamond's arm fractures would have caused significant pain, and obvious swelling and bruising. The Court, therefore, completely discredits the respondents' testimony.
Finding of Child Abuse of Diamond
Family Court Act §1012(e) defines an abused child as
a child less than 18 years of age whose parent or other person legally responsible for the child's care either (i) inflicts or allows to be inflicted upon such child physical injury by other than accidental means which causes or creates a substantial risk of death, or serious or protracted disfigurement, or protracted impairment of physical or emotional health or protracted loss or impairment of the function of any bodily organ, or (ii) creates or allows to be created a substantial risk of physical injury to such child by other than accidental means which would be [*7]likely to cause death or serious or protracted disfigurement, or protracted impairment of physical or emotional health or protracted loss or impairment of the function of any bodily organ.
Dr. Kutin testified that by the time he saw Diamond, her medical condition had become extremely serious and life threatening. A large amount of staphylococcus, streptococcus, candida and haemophilus parainfluenza in the child's gastro-intestinal tract provided evidence that there was a lengthy time period between the creation of the perforation and the time the surgery was performed to correct the problem. Dr. Kutin testified that possible long term effects of the child's injury and surgery include scars and adhesions forming inside the abdominal cavity as a result of infection and that intestinal obstructions are possible at any time in the child's future. According to Dr. Kutin, Diamond's abdominal condition would have become obvious to the respondents approximately two days before they took action. The child would have become irritable, unable to eat and drink, and unable to walk because of discomfort in the abdominal area.
The Court therefore finds that the respondents' failure to respond quickly to Diamond's abdominal condition constitutes the creation of a substantial risk of physical injury to Diamond by other than accidental means which would be likely to cause death or serious or protracted impairment of Diamond's physical health or protracted loss or impairment of the function of a bodily organ. The respondents' failure to respond at all to her obvious arm injury further supports a finding that Diamond is an abused child.
Finding of Abuse Pursuant to Family Court Act §1046(a)(ii)
In addition to the Court's finding that Diamond is an abused child within the meaning of Family Court Act §1012(e), the Court notes that Family Court Act §1046(a)(ii) provides an additional basis for making a finding in this case. Family Court Act §1046(a)(ii) provides that a prima facie case of child abuse or neglect may be established by evidence of an injury sustained by a child of such a nature as would not ordinarily be sustained absent an act or omission of a parent or person legally responsible for the child's care, and proof that the parent was the sole caretaker at the time the injury was sustained. This basis upon making a finding of abuse is analogous to the negligence rule of res ipsa loquitur upon which the statute is modeled. See Matter of S., 46 Misc 2d 161, 259 NYS2d 164 (Family Court, Kings County, 1965) and Matter of Roman, 94 Misc 2d 796, 405 NYS2d 899 (Family Court, Onondaga County, 1978.)
The burden of proving child abuse always rests upon the petitioner. However, under the
res ipsa loquitur theory, once the petitioner has established a prima facie case, the burden of going forward to rebut the presumption of parental responsibility for abuse shifts to the respondent. The respondent's burden is then to establish that the child was not in his or her care at the time the injury was sustained or to demonstrate that the injury or condition could reasonably have occurred accidentally and/or without the acts or omissions of the respondent. See Matter of Phillip M., 82 NY2d 238, 604 NYS2d 40 (1993).
After carefully considering the totality of the circumstances presented in this matter, this
Court finds that the petitioner has indeed made a prima facie case of child abuse pursuant to Family Court Act §1046(a)(ii). The child Diamond suffered a life-threatening injury to her abdominal area resulting in surgical intervention and pediatric critical care treatment. The child was hospitalized for almost a full month as a result of her serious injuries. The medical [*8]evidence and testimony presented to this Court established clearly that these abdominal injuries are rare in three-year-old children and were highly likely to have been caused by blunt trauma. Additionally, the child suffered from fractures in her right arm, detected by a skeletal survey conducted after doctors became suspicious that her abdominal injuries resulted from child abuse. These conditions would not ordinarily be present in a child of Diamond's age absent abuse. The petitioner further established that the respondents were the primary caretakers for the child at the time she suffered these injuries. The burden then shifted to the respondents to establish that either they weren't the child's caretakers, or to establish that the child's condition occurred naturally or accidentally. Both respondents failed to present such evidence. Neither respondent provided a credible alternative explanation that would absolve them of culpability for the child's various injuries. The evidence, therefore, established that such events would not have occurred absent the intentional acts of the respondents.
Derivative Abuse of the Children Dasire and Shaniyah
Also at issue before the Court is whether the siblings of Diamond are abused children within the meaning of Family Court Act §1012(e).
The theory of the derivatively abused child applies here. "Derivative findings in Article 10 proceedings are predicated upon the common understanding that a parent whose judgment and impulse control are so defective as to harm one child in his or her care is likely to harm others as well." Matter of Marino S., 181 Misc 2d 264, 693 NYS2d 822 (Family Court, New York County, 1999), Aff'd 293 AD2d 223, 741 NYS2d 207 (1st Dept., 2002) Courts have found that a parent's proven acts of abuse toward one child can create a substantial risk of abuse of other children under that parent's care. Derivative findings of child abuse may be made where "the conduct which formed the basis for a finding of abuse or neglect as to one child is so proximate in time to the derivative proceeding that it can reasonably be concluded that the condition still exists. In such a case, the condition is presumed to exist currently and the respondent has the burden of proving that the conduct or condition cannot reasonably be expected to exist currently or in the foreseeable future." Matter of Priscilla Cruz, 121 AD2d 901, 503 NYS2d 798 (1st Dept., 1986). Proof of the abuse or neglect of one child is admissible evidence on the issue of the abuse or neglect of any other child of, or the legal responsibility of, the respondent. Family Court Act §1046(a)(i). A finding of derivative neglect may be made where the respondent's conduct toward one child demonstrates "a fundamental defect in his understanding of the duties of parenthood...." Matter of Nicole G., 274 AD2d 478, 711 NYS2d 908 (2nd Dept. 2000), Matter of Christina Maria C., 89 AD2d 855, 453 NYS2d 33 (2nd Dept. 1982).
In this case, there can be no argument that the respondents' original abusive acts toward three-year-old Diamond are proximate in time to the request for derivative findings as to her young siblings Dasire and Shaniyah. There can be little doubt if one accepts this Court's findings, that the respondents' culpability for the abuse of Diamond shows a fundamental defect in their understanding of the basics of parenting, and raises serious concerns about their ability to properly parent any child. By the respondents' own admissions, they left three-year-old Diamond and five-year-old Dasire at home alone the night prior to Diamond's presentation at Jamaica Hospital, an act that shows, at a minimum, seriously irresponsible parenting. Additionally, they are both responsible for the abuse of Diamond. Clearly there has been no intervention to indicate [*9]that these defects in understanding have been remedied in any way.
Having found that the respondents are responsible for the abuse of Diamond, and finding no evidence of any change in the respondents' lives that would cause them to behave any differently in the future, the Court finds that there is a substantial risk that the respondents will cause physical injury to the other children of a similar magnitude.
Therefore, findings of child abuse are entered against the respondents as to all the subject children as a result of the respondents' responsibility for the abuse of the child Diamond. Accordingly, it is hereby
ADJUDGED, that Diamond F., Dasire F. and Shaniyah W. are abused children as defined in Family Court Act §1012.
This matter shall proceed to a dispositional hearing pursuant to Family Court Act §§1045 and 1052 on a date convenient to the Court and all parties. The Court orders that an investigation and report be conducted by ACS. The Court further orders that a comprehensive mental health evaluation be conducted upon the respondents by the Court's Mental Health Clinic. The verbal subject children and their caretakers are to participate in the evaluations and are to be interviewed as collateral sources of information for all evaluators. The reports conducted in this matter shall address diagnosis, treatment and child placement recommendations as it regards all parties and the subject children.
This constitutes the decision and Order of this Court.
ENTER:
________________________
Dated: Jamaica, New YorkEDWINA G. RICHARDSON
April 5, 2006Judge of the Family Court